STATE of South Dakota, Plaintiff
and Appellee,

v.

Ricky Ray GRAYCEK, Defendant
and Appellant.

No. 14767.

Supreme Court of South Dakota.

Considered on Briefs April 12, 1985.

Decided May 22, 1985.

Jeffrey P. Hallem, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on the brief.

Steven G. Haugaard of Braithwaite Law Offices, Sioux Falls, for defendant and appellant.

WOLLMAN, Justice.

This is an appeal from a judgment of conviction imposed following defendant's plea of guilty to three misdemeanor counts of distribution of marijuana and a felony charge of failure to appear and his admission of identity to an information charging him with being a habitual criminal. We affirm.

On March 13, 1984, an indictment was filed charging defendant with three felony counts of distribution of marijuana in violation of SDCL 22–42–7. On March 13, 1984, a supplemental, or Part II, information for habitual offender was filed alleging that

defendant had been convicted of felonies on three prior occasions.

On March 30, 1984, defendant entered his plea of not guilty to all counts of the indictment as well as to the Part II information.

Trial was set for August 6, 1984. Upon defendant's failure to appear for trial on that date, a complaint was filed charging defendant with the crime of failure to appear after release on bail. SDCL 23A–43–31. Defendant was subsequently apprehended in California and was returned to Beadle County, where he made his initial appearance before the circuit court on the failure to appear charge on September 14, 1984.

On September 24, 1984, defendant appeared before the circuit court for arraignment. At the outset of the proceedings, defendant acknowledged on the record in response to the trial court's inquiry that his attorney had been negotiating with the state's attorney on a plea agreement. Thereafter, the trial court advised defendant of the fact that in addition to the three felony drug distribution charges that were pending against him there was the additional charge of failure to appear. The trial court then went on to state:

> In addition to the informations that are on file, there is a habitual information which has been filed by the State which comes into play in that it is alleging you have three previous felonies. By virtue of that, whatever penalty that is provided for in any of the other classes, they can be increased to a sentence of up to life imprisonment.

Do you understand that?

THE DEFENDANT: Yes, sir.

The trial court then went on to advise defendant of his constitutional rights with respect to the charges. The trial court then stated:

> Now, as I understand the plea agreement, the State has agreed that they would dismiss the three counts of distribution of marijuana as felony counts, and are refiling a complaint for distribution of marijuana, which would constitute

Class I Misdemeanors, as it alleges that the amount was less than one ounce.

Have you received a copy of that complaint?

THE DEFENDANT: Yes, sir.

After being advised of his right to a preliminary hearing on the misdemeanor drug distribution charges and the failure to appear charge, defendant waived his right to preliminary hearing with respect thereto. The trial court then stated:

> In File # 84–68 [felony distribution file], there is a part-two information. And you have received a copy of that part-two information; is that correct?
> [DEFENSE COUNSEL]: .... Yes.

The trial court then advised defendant of his rights regarding the Part II information and the State's burden of proof with respect thereto. The trial court then made careful inquiry of defendant concerning his age, educational level, capacity to understand the English language, and the condition of· his mental and emotional health. Following this, the trial court fully and carefully advised defendant of all of his constitutional and statutory rights regarding all of the charges that had been filed against him, together with the maximum penalties on those charges. With respect to the Part II information, the following exchange occurred:

> THE COURT: And what is the effect that the habitual information, which alleges that you have three previous felony convictions, what's the effect of that upon the penalty?
> THE DEFENDANT: Makes it a Class I Felony.
> THE COURT: Which could mean what?
> THE DEFENDANT: Life.

The trial court then went on to refer to what had been marked as Exhibit 1 (which apparently was the written plea bargain agreement, a copy of which is not part of the record) by stating:

> And in it, it says that Ricky Ray (Rick) Graycek acknowledges receipt of the following plea bargain [sic] now under con-

sideration by the Beadle County Prosecutor's Office. And it says that if this plea bargin [sic] becomes available, I authorize my attorney, Mary G. Keller, to accept it on my behalf. And it lists six separate paragraphs.

The trial court then read into the record the conditions of the plea bargain, which were basically as follows:

1. That the three felony counts of distribution were to be reduced to misdemeanor counts.

2. That defendant would plead guilty to the charge of failure to appear.

3. That defendant would enter a plea of guilty to the Part II habitual offender information on the condition that he would not receive a life sentence.

4. That defendant was aware that under South Dakota law one of his prior felonies, a burglary conviction, is classified as a violent crime, which had the effect of establishing defendant's eligibility for being classified as a habitual offender.

5. That defendant was entitled to a presentence investigation and a sentencing hearing and that no sentence recommendation would be made to the court by the State and that no further charges on any of defendant's past actions would be brought by the Beadle County State's Attorney.

(There were additional provisions in the plea agreement, but we do not deem them material to the issues presented by this appeal.)

The trial court then went on to once again assure itself that defendant understood his constitutional rights, especially the effect of the entry of a guilty plea and the possible consequences thât could flow from it. In particular, the trial court informed defendant that "the only issue will be the sentence; and that you could subject yourself to the maximum penalty of up to life in the South Dakota State Penitentiary...."

Defendant then entered his plea of guilty to the three misdemeanor drug distribution charges. Prior to accepting defendant's guilty plea to the failure to appear charge, the trial court specifically informed defendant that "however, as soon as—if you admit the habitual information, the penalty could be increased up to life imprisonment, how do you plead?," in response to which defendant entered his guilty plea.

Defendant then acknowledged that he was the person who had committed the three felonies set forth in the Part II habitual offender information. The trial court then continued the proceedings pending the receipt of a presentence investigation report.

Defendant next appeared before the circuit court on October 4, 1984, at which time the trial court indicated that the state's attorney had called his attention to the fact that there was apparently a technical defect in the proceedings in that the Part II habitual offender information had been filed with reference to the three felony drug distribution charges that were later dismissed in accordance with the plea bargain. The state's attorney then moved to dismiss the failure to appear charge and indicated that the State would then file a new complaint on that charge. Defendant objected to this proposed course of action. Defense counsel acknowledged that defendant understood that if he entered a plea of guilty to the failure to appear charge the punishment imposed on that charge would be enhanced to that of a habitual offender. Defense counsel contended, however, that the failure of the State to file a new Part II information at the time of the arraignment on the failure to appear charge might constitute a jurisdictional defect that would render illegal any sentence imposed thereon.

The trial court rejected this contention and set sentencing for October 9, 1984, at which time the court offered defendant the opportunity to withdraw his plea and be reinstated to the position he was in prior to his entering the pleas pursuant to the plea bargain agreement. Defendant refused this offer, whereupon the trial court pro-

ceeded to sentence defendant to twenty-five years in the state penitentiary.

Defendant raises two issues on appeal. First, he contends that the trial court was without jurisdiction to sentence him as a habitual offender under the Part II information inasmuch as that information had not been filed in conjunction with the failure to appear charge. Based upon the record made at the arraignment and the subsequent hearing, as set forth above, we agree with the trial court that the procedure followed by the State, although certainly not to be preferred, did not rise to the level of a jurisdictional defect.

SDCL 22-7-11 provides in part that "[a]n allegation that a defendant is an habitual criminal must be filed as a separate information at the time of, or before, his or her arraignment." The purpose of this requirement is, of course, to ensure that a defendant is fully aware at the time he is arraigned on and pleads to the principal felony charge that there is outstanding against him a habitual offender information that would have the effect of enhancing the punishment imposed upon him on the principal felony charge. *See, e.g., Black v. Erickson,* 86 S.D. 86, 191 N.W.2d 174 (1971); *State v. Steffenson,* 85 S.D. 136, 178 N.W.2d 561 (1970).

Because the habitual offender act is a highly penal enactment, we have held that it should be strictly construed and applied. *See, e.g., State v. Grooms,* 339 N.W.2d 318 (S.D.1983); *State v. Layton,* 337 N.W.2d 809 (S.D.1983); *State v. Alexander,* 313 N.W.2d 33 (S.D.1981).

We have also held, however, where a defendant is not prejudiced thereby the trial court may permit the State to amend a habitual criminal information. *State v. Layton, supra; State v. Garritsen,* 302 N.W.2d 409 (S.D.1981).

We have also held that where a defendant is aware of the fact that the State is proceeding under a habitual offender information with respect to the principal felony and has been advised of the maximum possible punishment thereunder and the conse-

quences of his plea with respect to the principal felony, the fact that the habitual offender information was not filed with respect to an amended indictment on the principal felony does not render a habitual criminal conviction void. *State v. Alexander, supra.*

In *State v. Grooms, supra,* we held that the State's failure to file a new habitual offender information following a refiling of the indictment on the principal felony following a mistrial did not constitute a jurisdictional defect where it was clear from the record that the defendant knew from the original indictment that the State would charge him with being a habitual offender, that he knew the consequences of such status, that the supplemental information from the original trial was still on file, and that the defendant had stipulated to its use.

We conclude that the principles set forth in *Alexander* and *Grooms, supra,* are equally applicable to the case before us. Defendant can certainly claim no surprise, prejudice, or disadvantage. He entered his plea to the principal offense and acknowledged his identity with respect to the Part II habitual offender information with full knowledge of the consequences thereof and in accordance with the plea bargain agreement that his counsel had prepared and to which he had agreed. Defendant's contention that our decision in *Honomichl v. State,* 333 N.W.2d 797 (S.D.1983), is controlling is misplaced. There, we held that the conviction for a third offense driving while intoxicated charge was invalid because no information had ever been filed. In the instant case a properly prepared Part II habitual offender information had been filed, and defendant was fully aware of that fact and the consequences of his plea to the principal felony. In effect, the record made at the September 24, 1984, arraignment and plea proceedings clearly establish that defendant in effect acquiesced to a substitution of the principal felony charge which served as the predicate for the Part II habitual offender information.

■ Defendant's second contention is that the inclusion of the offense of third-degree burglary in SDCL 22–1–2(8) as a crime of violence for the purposes of enhanced punishment pursuant to SDCL 22–7–8 constitutes a violation of the constitutional prohibition against overbreadth and denies him his rights under the equal protection clauses of the state and federal constitutions. We disagree.

SDCL 22–7–8 provides:

If a defendant has been convicted of three or more felonies in addition to the principal felony and one or more of the prior felony and one or more of the prior felony convictions was for a crime of violance as defined in subdivision (8) of § 22–1–2, the sentence for the principal felony shall be enhanced to the sentence for a Class 1 felony.

SDCL 22–1–2(8) provides:

"Crime of violence," any of the following crimes or an attempt to commit, or a conspiracy to commit, any of the same: murder, manslaughter, rape, aggravated assault, riot, robbery, burglary, arson, kidnapping and any other felony in the commission of which the perpetrator used force, or was armed with a dangerous weapon, or used any explosive or destructive device[.]

In *State v. Vigna*, 260 N.W.2d 506 (S.D. 1977), we held that it was not impermissible for the State to characterize third-degree burglary as a crime of violence within the meaning of SDCL 23–7–3, which makes it a crime for one who has been convicted of a crime of violence to own or have in his possession or under his control a pistol. We conclude that the same considerations that caused us to reach that result in *Vigna, supra,* are applicable here. It was for the legislature to determine within its proper range of discretion that those persons who commit burglaries by means of surreptitious, non-violent entry are equally as deserving of enhanced punishment on a subsequent felony as those whose burglaries are committed in a more aggravated manner.

We have not overlooked defendant's argument that in *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), the United States Supreme Court characterized Helm's prior offenses, which included a third-degree burglary conviction, as non-violent. We do not read the Court's opinion as constituting a holding that third-degree burglary may not be classified by a state as a violent crime for purposes of enhanced punishment. Rather, the Court was concerned with the lack of proportionality of Helm's sentence on the principal offense, given the Court's view that his prior offenses were not serious enough to justify a life sentence without possibility of parole. Defendant makes no such argument in the instant case, and we conclude that his reliance upon *Solem v. Helm* is therefore misplaced.

The judgment of conviction is affirmed.

All the Justices concur.

WUEST, Circuit Judge, Acting as Supreme Court Justice, participating.