**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Larry WEBER, d/b/a Wild Wings Upland Game Hunting, Inc., Defendant and Appellant.**

**No. 17538.**

Supreme Court of South Dakota.

Considered on Briefs March 19, 1992.

Decided July 1, 1992.

Mark Barnett, Atty. Gen., David D. Wiest, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Thomas K. Wilka of Hagen, Wilka, Schreier & Archer, Sioux Falls, for defendant and appellant.

PER CURIAM.

Larry Weber ("Weber") appeals his conviction for "making a false or fraudulent return in attempting to defeat or evade sales tax." We reverse and remand.

### FACTS

Weber started a private hunting business in South Dakota in April 1989. Weber's hunting business was incorporated as Wild Wings Upland Game Hunting, Inc. ("Wild Wings"). Kasey Fey ("Fey"), a revenue agent for the State of South Dakota, discovered that Wild Wings had not filed an application for a sales tax license and so he telephoned Weber on November 1, 1989. Fey talked to Weber and sent him an application for a sales tax license.

On November 15, 1989, Weber returned the completed sales tax application to Fey. Soon after he received it, Fey contacted Weber to go over the application form. During that second phone conversation (in late November 1989) Weber told Fey that Wild Wings had a few sales in 1989. Fey told Weber that Wild Wings needed to file a sales tax return for 1989. Fey forwarded the necessary forms to Weber.

On January 20, 1990, Weber completed a sales tax return which indicated that Wild Wings had no gross sales in 1989. While reviewing that return on January 27, 1990, Fey noticed that Wild Wings had claimed no gross receipts in 1989. In sales tax vernacular Weber had filed a "none return." Fey referred the case to the revenue department's fraud division. Shortly thereafter the fraud division agent quit and the case was transferred back to Fey.

Fey then contacted Weber about the "none return." Weber told Fey that he had a few sales in 1989 but that they were not significant. Fey told Weber that any gross receipts, no matter how insignificant, had to be reported and were taxed. Fey told Weber that he would need to amend his 1989 return to accurately reflect those gross receipts. On March 1, 1990, Fey sent Weber the forms necessary to amend the original 1989 return.

Fey had not received the amended return by April 30, 1990, so he again talked to Weber on the phone and then he sent a letter with another set of forms. In this letter he informed Weber that "filing a return that is knowingly not correct, could constitute a fraudulent return."

On June 27, 1990, Fey again transferred the case to an agent in the fraud division of the Department of Revenue. Weber was contacted and told to come to the Department of Revenue with his records. On July 27, 1990, the Revenue Department reviewed Weber's records and determined that Wild Wings had gross receipts in 1989.

Weber was indicted by a grand jury on September 6, 1990 for making a false or fraudulent return (SDCL 10–45–48.1(1)). The case was tried to a jury in Minnehaha County on December 12 and 13, 1990. Most of the facts in the case were not disputed. Weber admitted that he had gross receipts in 1989 and that he had filed a "none return" for 1989. The primary issue of fact was whether Weber had filed the "none return" with the intent to defraud the State.

Weber testified that he did not intend to file a fraudulent return. He claimed he was only doing what Fey told him to do. Weber testified that Fey told him he needed something for the file and didn't care what it was. Weber testified that he asked Fey if he could put none for gross receipts and that Fey had responded: "Anything. Just so I have something in my file. Get it back to me so I have it for my file."

Fey was called to testify a second time and rebut Weber's allegations. Fey denied that he had told Weber to just get a form filed. Fey admitted on cross-examination

that he did not keep records of all phone calls.

At trial, the prosecution attempted to admit into evidence an unsigned 1988 federal 1040 income tax form (hereinafter "1988 federal tax form") which had been filled out in Weber's name. The 1988 federal tax form was unsigned and there was no evidence that it had been filed with the IRS. Defense counsel objected to the 1988 federal tax form on grounds of relevance. The trial court reserved ruling noting that it was "premature." The trial court suggested that in appropriate circumstances Weber might be questioned about the 1988 federal tax form after he testified.

Weber testified on his behalf. During direct examination, Weber did not testify in regards to the accuracy of the federal tax forms he filed in any year, nor was he asked any questions on direct about the accuracy of his federal tax return. He did not make any claims that he was particularly careful in filling out tax forms or that he was a meticulous tax record keeper. On cross-examination the prosecutor asked Weber about his employment in 1988. Weber testified that he had worked for U.S. West during 1988. The prosecutor then asked him if he filed a federal income tax return in 1988. Weber's defense counsel objected on grounds of relevancy. The trial court overruled the objection for cross-examination purposes. Without asking any further questions the prosecutor presented Weber with the 1988 federal tax form and asked Weber why he hadn't reported his U.S. West income on that form. Weber explained that he was involved in a divorce action at the time and his wife had taken the tax information to the accountant. Weber further stated that the 1988 federal tax form was not signed. The prosecution offered the 1988 federal tax return into evidence. Weber's counsel objected and noted that the form was not signed and it had not been shown that the return had been filed with the IRS. The trial court ruled: "I'll receive the form, for whatever value it has."

In closing arguments the prosecutor referred to the 1988 federal tax form and noted that Weber's income from U.S. West was not listed on the form. The prosecutor then argued:

He got away with it apparent—apparently got away with it in the Federal Government. He didn't put any income down. He testified on the stand he had over five thousand dollars income in 1988. Where is it on the form? He didn't put it on this form. He thinks he got away with it in the Federal Government and just a few months after that he tried it again with the State.

\* \* \* \* \* \*

Do you think he filed an honest return with the Federal Government, too? Come on, folks. You know better than that.

\* \* \* \* \* \*

Here is (sic) the records that he finally brought in. This shows he had income in 1988, Exhibit 13. It's clear it's his own handwriting. Where is it on his return? He didn't put it on. He evaded Federal Income Taxes. He evaded State Sales Tax. He didn't even bother to report this. This is minuscule. This is nothing, according to Mr. Weber.

That argument clearly demonstrates that the prosecutor used the 1988 federal tax form as a "prior bad act" to show Weber's propensity to file fraudulent tax forms. The jury was not given any cautionary instruction regarding how it should view the 1988 federal tax form as other acts evidence under SDCL 19–12–5. Weber was convicted of making a false or fraudulent return. He was sentenced to two years in the penitentiary with 22 months suspended on condition that he pay the back-due taxes and the costs of prosecution. Weber appeals.

## DECISION

■ There was no factual dispute at trial that Wild Wings had gross receipts in 1989. Weber admitted that. Still, he filed a "none return" for Wild Wings. At issue was his intent when he filed that none return. Weber contended that he did not file the "none return" with the intent to

defraud the State. He claimed Fey told him to just fill out the form and get it in. Fey denied Weber's testimony. Under SDCL 10–45–48.1(1), the State was required to prove that Weber filed the tax return in an attempt to defeat or evade the sales tax. In order to determine what Weber specifically intended, the jury had to weigh the credibility of Weber and Fey.

The prosecution initially sought to admit the 1988 federal tax form under SDCL 19–12–5 as a prior bad act, but the trial court ruled it was not relevant to the issues in the case. After Weber had testified, the 1988 federal tax form was received into evidence. The trial court did not specifically state under what authority the 1988 federal tax form was being admitted.[1] State claims the unsigned 1988 tax form was admissible to attack Weber's credibility and character for truthfulness under SDCL 19–14–10. The jury was not given any instruction about how to view evidence admitted under SDCL 19–14–10.

"Courts have consistently looked with disfavor on receiving evidence of defendant's bad character unless he first offers evidence of his good character." *State v. Johnson*, 254 N.W.2d 114, 119 (S.D.1977). For example, *if* Weber had testified that he always filed accurate and complete tax returns, then a prior inaccurate and falsely filed tax return could be relevant to impeach the testimony about his character for truthfulness when preparing tax returns. Weber did not open any such doors in his direct examination. *See, e.g., State v. Petruzello*, 250 N.W.2d 682 (S.D.1977) and *State v. McCreary*, 82 S.D. 111, 142 N.W.2d 240 (1966).

If the witness has not first testified concerning his character for truthfulness there is only one way prior acts may be brought up under SDCL 19–14–10. A prosecutor must first ask the witness about the prior act or statement. If the witness admits the prior act or statement on cross-examination then the untruthfulness is illuminated. *See State v. Eagle Hawk*, 411 N.W.2d 120, 125 (S.D.1987) (admission by witness that she had fraudulently obtained welfare benefits was admissible under SDCL 19–14–10 as probative of "truthfulness"). If the witness denies the prior act or statement, it may not be proved by extrinsic evidence. SDCL 19–14–10.[2] *See also*, McCormick, On Evidence § 41 (4th ed.); 3 Louisell & Mueller, Federal Evidence, § 306 (1991 Supp.)

The statutory prerequisites were not complied with in this case. *The trial court admitted extrinsic evidence* to attack Weber's credibility and character for truthfulness although proper basis and foundation for the attack had not been established. The federal tax form was unsigned and was a worksheet; it was prepared by Weber's accountant, not by Weber. The prosecution did not produce any evidence that the federal tax form was ever mailed to the Internal Revenue Service. In order to be admissible the document had to be authenticated. *See State v. Hatten*, 312 N.W.2d 469, 470 (S.D.1981) (State failed to call bank officials as witnesses, bank signature card was never introduced, investigating officer contacted neither bank involved.) The federal tax form was never authenticated. Clearly SDCL 19–14–10 was circumvented or ignored. *See State v. Chief Eagle*, 377 N.W.2d 141, 144 (S.D.

---

1. The trial court admitted the unsigned 1988 tax form "for whatever value it has." The trial court's failure to specify its basis for admitting the evidence places the parties in the awkward position of not knowing what to argue before this Court. Weber's brief contains an argument that the evidence was not admissible as bad act evidence. State concedes in its brief that the trial court did not admit the evidence as bad act evidence under SDCL 19–14–5. Accordingly this Court does not address the standards for the admission of bad act evidence.

2. SDCL 19–14–10 provides:
   Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in §§ 19–14–12 to 19–14–16, inclusive, *may not be proved by extrinsic evidence.* They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness
   (1) concerning his character for truthfulness or untruthfulness, or
   (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified. (emphasis added).

1985) (use of extrinsic evidence in the form of testimony to prove untruthfulness was error). *See also, State v. Tribitt,* 327 N.W.2d 132 (S.D.1982) (contains a list of similar cases). The use of this extrinsic evidence by the prosecutor was clearly inappropriate and the trial court erred in allowing its admission.

WHETHER THE TRIAL COURT'S ADMISSION OF THE 1988 TAX FORM HARMLESS ERROR

State argues that any error was harmless under SDCL 23A–44–14 and does not justify reversal. We reject that contention. An error is harmless if absent the error it is "clear beyond a reasonable doubt that the jury would have returned a verdict of guilty." *State v. Younger,* 453 N.W.2d 834, 838 (S.D.1990).

The jury had to decide if Weber filed the form with intent to defraud. This issue came down to a question of credibility. Weber's credibility was unquestionably damaged by the admission of the 1988 federal tax form. Perhaps more importantly, the prosecutor argued the 1988 federal tax form to the jury as bad act evidence. The erroneous admission of the 1988 federal tax form would not have been nearly so harmful if the prosecutor had not improperly argued it as a prior bad act. Weber did not get a fair trial. The harmless error rule ought never be used to justify unfairness at the trial. *State v. Dokken,* 385 N.W.2d 493, 500 (S.D.1986). It is not clear beyond a reasonable doubt that the jury would have convicted Weber absent the trial court's erroneous admission of the 1988 federal tax form. We reverse and remand.

MILLER, C.J., and WUEST, HENDERSON, SABERS and AMUNDSON, JJ., participating.