STATE of South Dakota, Plaintiff and Appellee,

v.

Bruce MARTIN, Defendant and Appellant.

No. 17717.

Supreme Court of South Dakota.

Considered on Briefs Aug. 31, 1992.

Decided Dec. 2, 1992.

Mark Barnett, Atty. Gen., Scott Bogue, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

William J. Klimisch, Goetz, Hirsch & Klimisch, Yankton, for defendant and appellant.

WUEST, Justice.

This is an appeal from a conviction for first-degree burglary in violation of SDCL 22–32–1(3).[1] Subsequently, Defendant Bruce Martin (Martin) pled guilty to being an habitual offender under SDCL 22–7–7. He appeals raising the following issues:

1. Whether the State failed to prosecute Martin within 180 days in violation of SDCL 23A–44–5.1.

2. Whether the trial court abused its discretion in denying Martin's motion for a change of venue.

3. Whether the trial court erred in refusing to include an instruction on simple assault as a lesser-included offense of burglary.

4. Whether the trial court erred in denying Martin's motion for acquittal based on insufficiency of evidence.

### FACTS

Martin and Doug Woods are cousins and former friends who have been estranged for some time. On the evening of February 8, 1990, Jack Fender (Fender), a hired man of Martin's, made annoying phone calls from the Martin residence to Jan Woods, the wife of Doug Woods. Fender ended the last call by stating, "Well I'm going to be there in five minutes." Martin claimed he did not know of the calls until after they were made.

At approximately 12:30 that night, Martin, Fender and Kathy Martin, Bruce's wife, drove into the yard of the Woods' home. When Jan Woods looked out the window and saw Fender getting out of the car she called the police for assistance. The Martins and Fender pounded on the door and rang the doorbell.

Jan and Doug Woods stated the lights were all off in the house when the Martin car arrived. Doug Woods testified at trial that when he answered the door, Fender and Martin forced their way into the house and assaulted him.

Martin maintained the lights were on in the Woods' home when they arrived and Doug Woods invited the Martins and Fender into his home. Martin claimed heated words were exchanged and then Doug

---

1. SDCL 22–32–1 provides in pertinent part:

Any person who enters an occupied structure, with intent to commit any crime other than the act of shoplifting or retail theft as described in chapter 22–30A constituting a misdemeanor, or remains in an occupied structure after forming the intent to commit any crime other than shop-lifting or retail theft as described in chapter 22–30A constituting a misdemeanor, is guilty of first degree burglary when:

. . . .

(3) The offense is committed in the nighttime. First degree burglary is a Class 2 felony.

Woods stepped toward him as if to take a swing and hit Fender instead. Martin claimed he then began wrestling with Woods. He stated they left the Woods' home as soon as requested.

A warrant was filed on February 13, 1990, charging Martin with first-degree burglary in violation of SDCL 22–32–1(1) and aggravated assault in violation of SDCL 22–18–1.1(4). A two-part information was filed by the state on May 24; part I charged first-degree burglary and part II charged Martin with being an habitual offender. A jury trial scheduled for July 12, 1990 was postponed until August 9, 1990 at the request of and due to health problems of Martin's attorney. On July 3, 1990 the state's attorney sent a letter to Martin's attorney advising him that the 180 days would expire August 13, 1990. The letter stated all parties agreed the State would be allowed an extension, if necessary, to dispose of the action.

On August 7, 1990, the state's attorney agreed to Martin's proposed plea bargain during a phone conversation in which the Honorable E.W. Hertz, the presiding judge, participated. Pursuant to this agreement, on August 9, the state's attorney sent to Martin's attorney a letter, a stipulation and agreement wherein Martin would expressly waive the 180–day rule and a document to institute a pre-plea, pre-sentence investigation before conviction or plea. The stipulation and agreement contained signature lines for the state's attorney, Martin's attorney and Martin. Martin's attorney signed the stipulation and the pre-plea agreement the same day he got it, August 10, 1990. He then mailed it to his client. Martin did not return the documents to his attorney, he did not voice any objection to the documents and he did not sign them. The presiding judge signed an order for the pre-sentence investigation; it was filed August 13, 1990.

The first plea and sentencing date was set for October 19, 1990. At the request of and due to the health problems of Martin's attorney, the hearing was postponed twice and rescheduled for December 10, 1990. Martin discharged his attorney approximately one week before the December 10 hearing which was then canceled.

Martin's new attorney filed a motion to dismiss on December 14, 1990. That motion was denied on January 11, 1991. A trial was held on April 19, 1991 wherein a jury returned a guilty verdict against Martin. On May 10, 1991 Martin's motion for a mistrial was granted.

On July 26, 1991, the defense made a motion for change of venue based on an affidavit by Bruce Anderson (Anderson), an attorney practicing in Platte, South Dakota. The affidavit stated Anderson had visited the Lake Andes and Wagner area approximately ten to twelve times since April 19, 1991 and "two out of three people I visited with mentioned Bruce Martin's conviction...." Affiant stated his belief that Martin could not get a fair trial in Charles Mix County, where Lake Andes is located. Martin's motion for a change of venue was denied on July 29, 1991. He was retried on August 8 and 9, 1991. The jury returned a guilty verdict; Martin was arraigned and pled guilty to being an habitual offender the same day. A judgment of conviction was entered on September 23, 1991 and Martin was sentenced to a term of ten years, with five years suspended on condition he abide by all conditions of parole.

## I.

Martin asserts the trial court should have dismissed the action due to the State's failure to prosecute him within 180 days of his initial appearance in violation of SDCL 23A–44–5.1.[2]

2. SDCL 23A–44–5.1 as it existed in 1990 provided:

The prosecution shall dispose of all criminal cases by plea of guilty or nolo contendere, trial or dismissal within one hundred eighty days from the date the defendant has first appeared before a judicial officer on the complaint or indictment. Any period of delay shall be excluded if the trial court finds good cause for the delay. In the event of the prosecution's failure to dispose of the action within the time limit required by this section, the action shall be dismissed.

We note that SDCL 23A–44–5.1 was amended in 1991 and now provides delay attributable to the defendant or his counsel will be excluded in

This court has previously determined that the 180–day rule may be waived by a defendant. *State v. Beynon,* 484 N.W.2d 898, 902 (S.D.1992). *Beynon* looked to Pennsylvania and Iowa for guidance concerning the 180–day rule. "There are no formal requirements for a valid waiver . . .; '[s]o long as there is an indication, on the record, that the waiver is the informed and voluntary decision of the defendant, it will be accorded prima facie validity.' " *Id.* (quoting *Commonwealth v. Brown,* 497 Pa. 7, 438 A.2d 592, 594 (1981) (quoting *Commonwealth v. Myrick,* 468 Pa. 155, 360 A.2d 598, 600 (1976))) (prior to 1982, the Pennsylvania speedy trial rule contained no express provision for waiver). "Likewise the Iowa Supreme Court has held that, even though waiver is not mentioned in the Iowa speedy trial rule, '[b]ecause the right to a speedy trial is personal, it is one which a defendant may forego at his election[.]' " *Beynon* at 902, (citing *State v. Magnuson,* 308 N.W.2d 83, 85 (Iowa 1981)). In *Beynon,* this court held "[t]he burden is on the state to show any waiver was the product of an informed and voluntary decision." *Beynon* at 902 (citing *Commonwealth v. Manley,* 491 Pa. 461, 421 A.2d 636, 640 (1980)).

■ *Beynon* implied there were no formal requirements to show waiver under SDCL 23A–44–5.1. *Beynon* at 902. We now hold the 1990 version of SDCL 23A–44–5.1 had no formal requirements to show a defendant's waiver of the right to a speedy trial. Therefore, Martin's failure to sign the stipulation and agreement does not automatically render the agreement invalid. However, under *Beynon,* the State must still prove an informed and voluntary waiver. *Id.*

■ Martin's waiver was not involuntary. He was informed of the 180–day rule—he admitted his attorney had informed him of the rule over the phone during discussions about his plea. He received the agreement and voiced no objection to the express waiver of the 180–day

rule until approximately November 30th, 10 days before the scheduled plea hearing and long after the 180 days had run. He agreed to the cancellation of the trial while awaiting his plea hearing. "[W]hen an accused requests a continuance near the end of the [speedy trial rule] period, a court may condition its approval on the accused's agreement to a trial date beyond the period." *Beynon* at 902–03 (quoting *Commonwealth v. Krasner,* 285 Pa.Super. 389, 427 A.2d 1169, 1174 (1981)). Here, Martin proposed a plea bargain to the state two days before trial and less than a week before the 180–day period would run. "[D]elay is a defendant's best lawyer; where a defendant assents to a period·of delay and later attempts to take advantage of it, courts should be loath to find a violation of an accused's speedy trial rights." *Beynon* at 903; *State v. Cross,* 468 N.W.2d 419, 420 (S.D.1991) (citing *Commonwealth v. Fisher,* 334 Pa.Super. 449, 483 A.2d 537 (1984)). "[A] defendant may not take advantage of the delay he is responsible for[.]" *Cross* at 420.

Martin knowingly and voluntarily waived his rights to a jury trial within the 180–day period.

## II.

Martin next contends the trial court erred when it denied his motion for change of venue before the second trial. He claims he could not obtain a fair and impartial jury in Lake Andes because of prejudice against him.

■ The trial court may order a change of venue if it appears prejudice is so great that a fair and impartial jury cannot be had in the county where the defendant is being prosecuted. SDCL 23A–17–5. The law presumes a defendant can receive a fair trial in the county where the offense occurred. *State v. Ashker,* 412 N.W.2d 97, 107 (S.D.1987) (*rev'd on other grounds, Ashker v. Leapley,* 798 F.Supp. 590 (D.S.D.1992)); *State v. Luna,* 378

counting the 180 days. Since the statute was amended after Martin's waiver, the new statute is not dispositive of this appeal.

N.W.2d 229 (S.D.1985). The test is whether, in fact, there is prejudice in the minds of county residents sufficient to raise a reasonable apprehension the accused cannot secure a fair and impartial trial in the county. *Ashker*, 412 N.W.2d at 107; *Luna*, 378 N.W.2d at 236; *State v. Wellner*, 318 N.W.2d 324, 330–31 (S.D.1982). The burden to establish the need for a change of venue is on the defendant. *Id.* The decision to grant or deny a change of venue is within the sound discretion of the trial court and will be reversed only when an abuse of discretion is shown. *Id.*

▆▆▆▆ Generally, a motion for a change of venue must be accompanied by affidavits or other evidence in the record. *State v. Weatherford*, 416 N.W.2d 47, 52 (S.D. 1987). Martin presents no evidence of newspaper articles, television reports or other publicity surrounding the trials. He seeks to show prejudice through the affidavit of Bruce Anderson, a member of the law firm that originally represented Martin in this action. Anderson avers that he visited with approximately 70 people in Lake Andes and Wagner in the ten or twelve times he visited the area between April and July of 1991. He estimated most of the people he spoke with were aware of Martin's conviction and approximately two thirds of them made remarks indicating Martin was guilty or just got off on a technicality.

We have held that "'qualified jurors need not be ignorant of facts and issues and that the existence of pretrial publicity alone is not enough to deny a defendant a fair trial.'" *Wellner*, 318 N.W.2d at 331 (quoting *State v. Reiman*, 284 N.W.2d 860, 868 (S.D.1979)). This court affirmed a trial court's denial of a motion for change of venue where the former state's attorney spoke with approximately six to ten local citizens and then submitted an affidavit expressing his opinion the murder defendant could not receive a fair trial due to pretrial publicity. *Ashker*, 412 N.W.2d at 108. The court stated:

> The Court feels that the people that he [former state's attorney] has contacted are not sufficient to determine the question and that voir dire examination of the jurors as they are called in will be sufficient to protect the interests of the Defendant.

*Id.*

Here, the trial judge determined the jurors in the special venire were from a widely dispersed area—not just Lake Andes and Wagner—so the affidavit of Anderson would not apply to them. Nor would the new venire panel have any connection with either the Jack Fender trial or the previous trial of Bruce Martin. Further, any opinions held by prospective jurors could be discovered during voir dire. We agree with the trial judge that the new jury panel and voir dire examination were sufficient to protect the rights of Martin to a fair trial. We hold Martin failed to meet his burden of establishing the need for a change of venue; the motion was properly denied.

## III.

▆▆▆▆ Martin asserts the trial court erred in refusing to instruct the jury that simple assault, set out at SDCL 22–18–1,[3] is a lesser included offense under first-degree burglary at SDCL 22–32–1.[4] The trial

---

**3.** SDCL 22–18–1 provides:

Any person who:

(1) Attempts to cause bodily injury to another, other than a law enforcement officer engaged in the performance of his duties, and has the actual ability to cause the injury;

(2) Recklessly causes bodily injury to another;

(3) Negligently causes bodily injury to another with a dangerous weapon;

(4) Attempts by physical menace to put another in fear of imminent serious bodily harm, with or without the actual ability to seriously harm the other person; or

(5) Intentionally causes bodily injury to another which does not result in serious bodily injury; *is guilty of simple assault.* Simple assault is a Class 1 misdemeanor.

**4.** SDCL 22–32–1 provides:

Any person who enters an occupied structure, with intent to commit any crime other than the act of shoplifting or retail theft as described in chapter 22–30A constituting a misdemeanor, or remains in an occupied structure after forming the intent to commit any crime other than shoplifting or retail theft as described in chapter 22–

court denied the requested instruction and Martin raises this as his third issue on appeal.

A defendant is entitled to all necessarily included offense instructions as set out in SDCL 23A–26–8.[5] This court has stated:

> Under the law as established in this state, it is incumbent upon the trial court to instruct the jury, if requested, upon a lesser offense included in the offense charged if the evidence warrants a conviction upon the included offense. [Citations omitted.] There are two tests that must be satisfied in determining whether the trial court should submit a lesser included offense instruction to the jury. The first is a legal test, the second is factual.

*State v. Heumiller,* 317 N.W.2d 126, 132 (S.D.1982) (quoting *State v. Oien,* 302 N.W.2d 807, 808–09 (S.D.1981)); *State v. Wall,* 481 N.W.2d 259, 263–64 (S.D.1992); *State v. Gillespie,* 445 N.W.2d 661, 663 (S.D.1989). The trial court ruled that simple assault did not meet the test for a necessarily included lesser offense of first degree burglary.

> The legal test is met if (1) the elements of the included offense are lesser in number than the elements of the greater offense; (2) the penalty for the included offense is less than that of the greater offense; and (3) the two offenses contain common elements so that the greater offense cannot be committed without also committing the lesser offense. [Citations omitted.]

*Gillespie,* 445 N.W.2d at 663.

Simple assault requires either bodily injury, an attempt to cause bodily injury or an attempt to put another in fear of bodily injury. First-degree burglary does not require these elements. Therefore, simple assault fails the third part of the legal test;

it is not a necessarily lesser included offense of first-degree burglary. Because simple assault fails the legal test, we do not reach the second, factual part of the test. The trial court did not err as a matter of law in refusing to give the requested instruction.

## IV.

■■■■ In his fourth issue, Martin contends there was insufficient evidence to sustain the jury's guilty verdict because the state failed to present evidence that he entered the Woods' residence with intent to commit a crime. Martin claims he was a friend of the victim, did not break into the home and was only inside ten minutes.

This court has repeatedly stated its standard of review in determining the sufficiency of evidence on appeal:

> [W]hether there is evidence in the record, which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt (citations omitted). In making this determination, the Court will accept the evidence, and the most favorable inferences fairly drawn therefrom, which will support the verdict.

*Beynon,* 484 N.W.2d at 906–07; *State v. Basker,* 468 N.W.2d 413, 417 (S.D.1991); *State v. Miller,* 429 N.W.2d 26, 38 (S.D. 1988). "Further, the jury is charged to be the exclusive judge of the credibility of the witnesses and the weight of the evidence." *Beynon* at 907; *State v. Caylor,* 434 N.W.2d 582, 583 (S.D.1989); *State v. Huber,* 356 N.W.2d 468, 475 (S.D.1984).

The jury was instructed that an element of the offense of burglary was the entering or remaining in an occupied structure with the specific intent to commit the crime of assault. The instruction on assault fol-

---

30A constituting a misdemeanor, is guilty of first degree burglary when:
(1) The offender inflicts, or attempts or threatens to inflict physical harm on another;
(2) The offender is armed with a dangerous weapon; or
(3) The offense is committed in the nighttime. First degree burglary is a Class 2 felony.

5. SDCL 23A–26–8 provides:

A defendant may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein if such attempt is an offense.

lowed the language of SDCL 22–18–1(5). There was sufficient testimony presented, with inferences drawn to support the jury's verdict, to sustain the jury's determination that Martin intended to assault Woods when he entered the Woods' home. We conclude there was sufficient evidence to support the jury's finding of guilt.

The decision of the trial court is affirmed on all issues.

MILLER, C.J., and HENDERSON, SABERS and AMUNDSON, JJ., concur.