**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Philip Ross HEFTEL, Defendant and Appellant.**

No. 18327.

Supreme Court of South Dakota.

Considered on Briefs Jan. 11, 1994.

Decided March 16, 1994.

398

Mark Barnett, Atty. Gen., Wade Hubbard, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Thomas E. Adams of Voelker and Adams, Lead, for defendant and appellant.

MILLER, Chief Justice.

Philip Heftel (Heftel) appeals convictions for committing grand theft in violation of 22–30A–3(3) and being an habitual offender under SDCL 22–7–8. We affirm.

## FACTS

Heftel moved to Deadwood, South Dakota, in July, 1992, and was employed at the Silverado Casino. Upon arriving in Deadwood, he opened a joint savings account (not a checking account) at the local branch of the Norwest Bank.[1] Heftel claimed he had always been unable to keep a checkbook balanced so he relied on the bank to monitor the balance in the savings account.

On the afternoon of September 14, 1992, Heftel told his roommate Dave Green (Green) that he was expecting "thirteen hundred and some odd dollars" to be wired to the account. Accompanied by Green, Heftel drove to the Norwest Bank drive-up window shortly after 3:00 p.m.; the main part of the bank was already closed.

Heftel asked the teller whether some money he had been expecting had been transferred into his account. Although the bank's computer did not yet show the transfer, the teller questioned other bank personnel and learned a wire transfer of $1,300 had been received but not yet posted to Heftel's account. She then wrote down the account balance, including the transfer, and gave the slip of paper to Heftel.

1. The account was a joint tenancy account with his then girl friend, Leigh Ann Ricker.

Because the drive-up window was busy, another teller began to wait on Heftel. He requested a withdrawal slip from the second teller and tried to withdraw $1,350. The teller checked her computer and found there was not enough money in his account. When she questioned the transaction, she was informed by the first teller that the bank had received a transfer that was not yet posted. The second teller then overrode the bank's computer, misread the numbers on the withdrawal slip and gave $1,550 to Heftel—two hundred dollars more than he had requested. Heftel took the money and left the bank.

Due to various bank delays, the withdrawal overdrafting Heftel's account did not show up on the bank's computer until September 17. Meanwhile, on September 16, at 3:30 in the afternoon, Heftel had gone to the drive-up window and inquired about the balance in his account (which by now included the $1,300 wire transfer). He did not ask whether any money had been deposited to the account through a subsequent wire transfer. When the teller said the computer showed a balance of over $1,360 dollars, Heftel withdrew $700 in cash and left the bank.

On September 17, Norwest discovered what had happened and contacted the Lawrence County Sheriff's Department. After investigation, Heftel was arrested and charged with grand theft by deception.

On September 29, 1992, in an unrelated matter, Heftel was arraigned on charges of assault and child abuse. A Part II Information listing seven previous felony convictions and alleging Heftel was an habitual criminal was filed by the State in that proceeding. At that arraignment, Heftel requested that his arraignment on the grand theft charge be delayed until a later time; the court granted his motion.

A Part II Information identical to the one filed in the assault action was given to the judge the morning of Heftel's arraignment on the grand theft charge on October 13, 1992. During the arraignment, the court informed Heftel the Part II Information had been filed, listed the previous felonies alleged, questioned whether Heftel had received a copy of the information, and advised him of the possible sentence enhancements if

he were convicted of being an habitual offender.

A jury found Heftel guilty of grand theft by deception for stealing $700 from Norwest Bank on September 16, 1992. In a subsequent trial to the court, Heftel was found to be an habitual offender. On March 15, 1993, he was sentenced to seventy years in the South Dakota State Penitentiary, with twenty years suspended on condition he make restitution to Norwest Bank. He appeals, stating three issues.

## DECISION

I. DID THE TRIAL COURT ERR IN DENYING HEFTEL'S MOTION FOR A JUDGMENT OF ACQUITTAL BASED ON INSUFFICIENT EVIDENCE?

Our standard of review of a denial of a motion for judgment of acquittal is whether State set forth sufficient evidence from which the jury could reasonably find the defendant guilty of the crime charged. *State v. Buller,* 484 N.W.2d 883 (S.D.1992) *cert. denied,* —— U.S. ——, 113 S.Ct. 248, 121 L.Ed.2d 181 (1992); *State v. Gallipo,* 460 N.W.2d 739 (S.D.1990). In determining the sufficiency of the evidence on appeal, the question is whether there is sufficient evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt; in making this determination, the court will accept the evidence, and the most favorable inference fairly drawn therefrom, which will support the verdict. *State v. Svihl,* 490 N.W.2d 269, 274 (S.D. 1992); *State v. Banks,* 387 N.W.2d 19, 27 (S.D.1986).

It is the function of the jury, not this court, to resolve conflicts in the evidence, determine witness credibility, and weigh the evidence. "We afford the strongest presumption in favor of the jury's determination of credibility." *State v. Arguello,* 502 N.W.2d 548, 552 (S.D. 1993); *State v. Martin,* 493 N.W.2d 223 (S.D. 1992); *State v. Huber,* 356 N.W.2d 468 (S.D. 1984).

All elements of a crime, including intent, may be proven through circumstantial

evidence. *State v. Davi,* 504 N.W.2d 844, 856–57 (S.D.1993). The "state of mind of the actor at the time he commits the offense, may be determined from his acts, conduct and inferences fairly deducible from the circumstances." *Huber,* 356 N.W.2d at 473.

▪ Heftel claims State did not present sufficient evidence to support the verdict in general or to sustain a finding that he had the specific intent necessary to commit grand theft by deception.[2] This court has previously resolved that theft by deception is a specific intent crime. *State v. Klein,* 444 N.W.2d 16, 19 (S.D.1989). We have explained that " 'intent to defraud' means to act willfully and with the specific intent to deceive or cheat, ordinarily for the purpose of either causing some financial loss to another or bringing about some financial gain to one's self." *State v. DeWall,* 343 N.W.2d 790, 792 (S.D.1984) (quoting South Dakota pattern jury instruction (criminal) 1–1–4). "This court over the past several years has repeatedly analyzed the specific intent/general intent dichotomy. The use of the terms 'intentionally' or 'knowingly' merely designate[s] that the culpability required is something more than negligence or recklessness." *State v. Shilvock–Havird,* 472 N.W.2d 773, 777 (S.D.1991) (citing *State v. Balint,* 426 N.W.2d 316 (S.D.1988); *Huber,* 356 N.W.2d at 472; *State v. Barrientos, III,* 444 N.W.2d 374 (S.D.1989); *State v. Bailey,* 464 N.W.2d 626 (S.D.1991)).

▪ On September 14, 1992, Heftel advised Green that he was expecting a wire transfer of approximately $1,300. At the drive-up window, he filled out a withdrawal slip for $1,350 and received $1,550 by mistake. Green, who was in the vehicle with Heftel, testified: "He withdrew the money, and he counted it out at the window. And counted it out two, three times. And he said he'd been paid [$]200 extra dollars. And I counted it out, and he was $200 extra." The

teller who had made the error testified that Heftel counted the money for a long period of time.

Green then testified concerning his conversations with Heftel on the 16th of September:

A He told me he was going to close out his and Leigh Ann's account. There was only $10 or so in there. He called me that afternoon and told me that the wire that he had picked up Monday had been transferred to his account, and he withdrew another $700 to put tires on his pickup and miscellaneous things.

Q Do you know what wire he was talking about?

A It was the wire from his mother.

Q Is that the one you already testified about?

A Yes.

Q From Monday?

A Yes.

Q How much did he say he took out?

A $700.

  *   *   *   *   *   *

Q And then he told you—How much did he tell you was in it when he actually went to check?

A They had put the whole [$]1,350, the wire, into his account.

Q Again?

A Again. A second time.

Heftel testified that he did not notice the extra $200 given to him by mistake on the 14th. He swore the additional money in the account on the 16th had come from a second wire transfer to his account from Andrew Goldstein, an Arizona man he claimed owed him money.

Lawrence County Sheriff's Department investigator James Charles testified that the telephone number Heftel had given him for Goldstein was "a no-good number" and his investigation through the Arizona police had

---

2. SDCL 22–30A–3 provides in part:
  Any person who obtains property of another by deception is guilty of theft. A person deceives if with intent to defraud he:
   *   *   *   *   *
(3) Fails to· correct a false impression which the deceiver previously created or reinforced, or which the deceiver knows to be influencing another to whom he stands in a fiduciary or confidential relationship[.]

failed to find anyone by that name. Investigation revealed there had not been a second wire transfer into Heftel's Norwest account.

Heftel claims that Green testified falsely. Evidence showed that after Heftel was arrested, Green wrecked Heftel's truck, sold some of his property and kept the money, and gave other property belonging to Heftel to Leigh Ann Ricker. Green also admitted that he was on probation for receiving stolen property.

■ Although the evidence was conflicting, the jury obviously believed Green's testimony that Heftel knew about the mistake before he took the money. *Accord, State v. Weber,* 487 N.W.2d 25, 28 (S.D.1992) ("[i]n order to determine what Weber specifically intended, the jury had to weigh the credibility of Weber and Fey"). It is not a proper function of this court to resolve evidentiary conflicts—the jury is the exclusive judge of the credibility of witnesses and the weight of the evidence in South Dakota. *State v. Battest,* 295 N.W.2d 739, 742 (S.D.1980); *Huber,* 356 N.W.2d at 476. Heftel has failed to overcome the presumption in favor of the jury's determination of credibility. *Arguello,* 502 N.W.2d at 552; *Svihl,* 490 N.W.2d at 274. State provided sufficient evidence for the jury to find Heftel specifically intended to defraud Norwest Bank.

## II. WAS HEFTEL'S SENTENCE EXCESSIVE AND DISPROPORTIONATE?

■ A review of the record from the lower court shows no objection to the sentence was made during Heftel's sentencing hearing nor was any data presented to support his claim of disproportionality. We have repeatedly declared:

This court has stated on numerous occasions that an issue not presented at the trial level will not be reviewed at the appellate level. The trial court must be given an opportunity to correct any claimed error before we will review it on appeal. *State v. Holt,* 334 N.W.2d 47 (S.D.1983); *State v. O'Connor,* 265 N.W.2d 709 (S.D. 1978). Appellant did not at any time prior to this appeal raise a claim that his sentence was improper or illegal. Therefore,

appellant's claim concerning his original sentence is not properly before this court.

*State v. Holter,* 340 N.W.2d 691, 692 (S.D. 1983); *State v. Sheridan,* 383 N.W.2d 865 (S.D.1986); SDCL 23A–32–14. Additionally, where no information concerning proportionality has been presented to the trial court, "this court will not accept an invitation to second guess the trial court on its sentence." *State v. Holloway,* 482 N.W.2d 306, 311 (S.D. 1992). Heftel's failure to object to his sentence or raise a claim it was improper at the trial court level has resulted in waiver of this issue for appeal.

## III. DID THE TRIAL COURT ERR IN ENHANCING HEFTEL'S SENTENCE DUE TO THE MANNER IN WHICH THE PART II INFORMATION WAS FILED?

Heftel was arraigned on the assault charge on September 29, 1992. State filed a Part II Information in that proceeding and Heftel admitted he had been provided a copy. At that arraignment, Heftel's attorney requested that the court delay arraignment on the grand theft count. The judge granted the motion.

■ On October 13, 1992, Heftel was arraigned on the grand theft charge, child abuse charges and again arraigned on the charge of simple assault. During the proceeding, the following exchange took place:

THE COURT: I see a Part II Information has been filed in that matter [referring to the child abuse charges]. Was this Part II Information to be also filed in 92–847?

MS. BRADY: Your Honor—Is 847 the grand theft, Your Honor?

THE COURT: Yes.

MS. BRADY: Yes, Your Honor. That was the one I put on your desk this morning.

THE COURT: All right[.]

The court then proceeded to read each prior felony from the Information, questioned Heftel as to whether he understood each allegation, and then informed Heftel as to the possible sentence enhancements under the habitual offender act. At each juncture,

the court ensured Heftel understood the charges. The court then asked whether Heftel had received a copy of the Information. Heftel replied that he had.[3]

A Part II Information charging the defendant with being an habitual criminal must be filed at the time of arraignment or before. SDCL 22–7–11.[4] When permitted by the court, documents may be filed with the judge rather than the clerk of courts. SDCL 15–6–5(e) provides:

> The filing of pleadings and other papers with the court as required by this chapter shall be made by filing them with the clerk of the court, except that *the judge may permit the papers to be filed with him,* in which event he shall note thereon the filing date and forthwith transmit them to the office of the clerk. (Emphasis added.)

Heftel claims that the Part II Information was not filed "at the time of" his arraignment because the Information was date stamped by the clerk of courts on October 14, 1992, rather than being signed by the judge on October 13, 1992, the date of the arraignment.[5]

■ We have held that because of its highly penal nature, the habitual offender act should be strictly construed. *State v. Loop,* 422 N.W.2d 420 (S.D.1988); *State v. Graycek,* 368 N.W.2d 815 (1985). This is to ensure that a defendant is fully aware, at the time he is arraigned and pleads to the principal felony, of the habitual offender information and the possibility of an enhanced sentence. *Loop,* 422 N.W.2d at 423; *Graycek,* 368

N.W.2d at 818; *Black v. Erickson,* 86 S.D. 86, 191 N.W.2d 174 (1971).

However, when the purpose of the act has been fulfilled and the defendant can claim "no surprise, prejudice or disadvantage," we have not reversed habitual criminal convictions because State failed to technically comply with the habitual offender act. *Graycek,* 368 N.W.2d at 818 (finding no jurisdictional defect where trial court sentenced defendant as habitual offender in conjunction with failure to appear charge where no information had been filed, because state had filed the information in relation to three felony charges later dismissed by plea bargain); *State v. Grooms,* 339 N.W.2d 318 (S.D.1983) (finding no jurisdictional defect where state failed to refile information with refiled indictment following mistrial); *State v. Alexander,* 313 N.W.2d 33 (S.D.1981) (finding no defect where state failed to refile information with amended indictment); *accord, State v. Brennan,* 2 S.D. 384, 392, 50 N.W. 625, 627 (1891) (finding no error where court was not mentioned in caption of information as defendant "could not, by reason of this, have been surprised, misled, left in doubt, or have lost any advantage in the preparation of his defense"); *cf. Black v. Erickson,* 86 S.D. at 90, 191 N.W.2d at 176–77 (affirming trial court's grant of habeas corpus where habitual criminal information was filed after guilty plea); *Honomichl v. State,* 333 N.W.2d 797 (S.D. 1983) (holding conviction invalid where no information had ever been filed).

---

**3.** In his writing, Justice Henderson assumes facts that are not in the record. On page 2 of his concurrence in part and dissent in part, he states "[the Part II Information] was placed on his desk and the judge did not know it." He goes on to claim the paper was on the desk "without the judge having any idea that it is there."

There is nothing to indicate whether the judge knew the paper had been placed on his desk or not—it is irrelevant. The relevant question is whether the judge possessed the Part II Information "at the time of the arraignment." Whether it was the copy the prosecutor put on his desk or a duplicate, the judge had the Information during the arraignment, Heftel stated he had a copy, and each prior felony was made known before he was called on to enter a plea.

**4.** SDCL 22–7–11 provides:

An allegation that a defendant is an habitual criminal must be filed as a separate information *at the time of,* or before, his or her arraignment. The information must state the times, places and specific crimes alleged to be prior convictions and must be signed by the prosecutor. An official court record under seal or a criminal history together with fingerprints certified by the public official having custody thereof will be sufficient to be admitted in evidence without further foundation to prove the allegation that the defendant is an habitual criminal. (Emphasis added.)

**5.** We do not approve of the procedure employed by the State in "putting a copy on your desk" as a method of filing legal documents with the court. When it is necessary to file papers during a court proceeding, the documents should be presented to the judge for his or her signature.

Other jurisdictions have applied similar reasoning in cases concerning the filing of an information. *United States v. Brown*, 921 F.2d 1304 (D.C.Cir.1990) (finding no error where judge accepted habitual criminal information in court on day of trial where defendant had prior notice); *Durley v. State*, 685 S.W.2d 284, 286 (Mo.App.1985) (determining the word "filed" stamped on habitual criminal information is not exclusive proof of filing, to be filed with the court the information need only be deposited with the clerk or the judge); *Williams v. State*, 767 S.W.2d 868, 872 (Tex.App.1989) (holding lack of file mark on enhancement information does not void conviction where other court documents show information was filed before conviction was obtained).

Heftel was fully advised by the court at the arraignment of the Part II Information and its possible consequences. Further, he suffered no prejudice due to the fact that the information was date stamped by the clerk of courts the following day rather than being signed by the judge the day of the arraignment.

The judgment of conviction is affirmed.

WUEST and SABERS, JJ., concur.

HENDERSON and AMUNDSON, JJ., concur in part and dissent in part.

HENDERSON, Justice (concurring in part; dissenting in part).

### I.

On Issue I pertaining to sufficiency of evidence, I concur.

### II.

True, Heftel's counsel did not make an objection to the sentence or present evidence on proportionality below, as required. *State v. Christians*, 381 N.W.2d 214, 217 (S.D. 1986). However, due to the position of this writer on Issue III, set forth herein, the sentence is excessive.

### III.

Due to the sloppy, ineffectual, and procedural non-compliance regarding (a) statutory mandate and (b) settled precedent in this Court, an enhancement of the sentence to 70 years was improper. SDCL 22–7–11 provides, inter alia, "An allegation that a defendant is an habitual criminal *must be filed* as a separate information *at the time of or before his or her arraignment.*" (Emphasis supplied mine.) It was not done. A resentencing, without benefit of employing the Part II Information, should now take place. Accordingly, I so vote.

- September 29, 1992, Heftel arraigned on principal charge before Circuit Judge Johnson.

- October 13, 1992, Heftel also arraigned in principal charge before Circuit Judge Johnson.

- October 14, 1992, Information on Part II is filed. THE FILING STAMP BY THE CLERK REFLECTS OCTOBER 14, 1992.

Majority opinion expresses "We do not approve of the procedure employed by the State in 'putting a copy on your desk' as a method of filing legal documents with the court." I share that opinion—that is why I dissent on this issue.

"The habitual offender act is a highly penal enactment and, therefore, it should be strictly construed and applied." *State v. Grooms*, 339 N.W.2d 318 (S.D.1983); *State v. Alexander*, 313 N.W.2d 33 (S.D.1981). We should stand by precedent.* The "papers" or "pleadings" were not filed with "him" (the judge). They were placed on his desk and the judge did not know it. Any rookie in the trial practice in this state knows you should (1) hand a document to the trial judge and (2) have "him" (or "her") place thereon a statement "filed with the Court," the date, and the signature of the trial judge affixed thereon. There are (ordinarily) many documents on a trial judge's desk. To just informally place an Information on a trial judge's desk, with-

* There has been a change in this Court's composition. I am the remaining member of the Supreme Court which decided *Grooms, Alexander,* and *Honomichl v. State,* 333 N.W.2d 797 (S.D.

1983). I do not suggest that the law should be a codeless myriad of precedent. But the judiciary must be a guardian of the law's stability and predictability.

out the judge having any idea that it is there, is hardly "filing with the court."

SDCL 23A–6–3 unambiguously provides in no uncertain terms: "All informations shall be filed with the court having jurisdiction of the offense by the prosecuting attorney *prior to the arraignment.*" (Emphasis added.) "Arraignment" is defined by SDCL 23A–7–1 as follows:

An arraignment shall be conducted in open court ... and shall consist of reading the indictment, information or complaint, as is applicable, to the defendant or stating to him the substance of the charge *and calling on him to plead thereto.* (Emphasis added mine.)

Thus, it is obvious that an information must be filed *before* the defendant is called upon to enter his plea to the charges set forth. Failing this, the trial court has no subject matter jurisdiction to take the plea. *State v. Mee,* 67 S.D. 589, 297 N.W. 40, 41 (1941), *on rehearing* (reversing 67 S.D. 335, 292 N.W. 875 (1940) due to lack of jurisdiction). *See also Honomichl v. State, supra.*

The Supreme Court of the state should not countenance placing papers on a trial judge's desk as a "filing." Such a procedure condones neglect. And such is, also, a marked contradiction to the express terms of state statute. Filing of an information is a serious, eventful procedure in the criminal law. It is a matter of vital substance—necessary to invoke the jurisdiction of a trial court to act—to proceed. We are not dealing with a mere technicality; nay, we are considering a statutory necessity.

### ADDENDUM

Footnote 3 of the majority opinion attempts to circumvent the thrust of the dissent by reflecting that, in effect, the dissenter only has a "claim" as to the true facts of placing the Part II Information "on his [circuit court judge's] desk and the judge did not know it."

In effect, the footnote accuses this writer of making up facts. At the arraignment, the trial court, as plainly indicated by the transcript quoted on page 8 of the conference opinion, found it necessary to ask if the Part II Information had been *filed.* This was not a rhetorical question nor was the trial court invoking the Socratic method for instructional purposes. The judge desired an answer because he did not know if such had been filed. Why ask if he knew? When informed by the State that the State had "put" the Part II Information on his desk, the judge simply remarked, "All right."

Majority writing, per footnote 3, states, "There is nothing to indicate whether the judge knew the paper had been placed on his desk or not—it is irrelevant." Completely erroneous. Again, why ask if he knew? If the judge does not know of the Part II Information, such document could not have been *filed* with him. It is relevant. This legally repugnant informality of "filing," by placing vital papers on a judge's desk, conflicts with SDCL 15-6-5(e) which permits filing with the judge and mandating that the judge "*shall* note thereon the filing date[.]" (Emphasis added.) Majority goes to great lengths to explain this. However, no notations by the judge appear on the Part II Information, thus it cannot be said to have been *filed* with him. It was put on his desk and he was unaware of it.

Footnote further argues "[t]he relevant question is whether the judge possessed the Part II Information at the time of the arraignment." This is contrary to SDCL 15-6-5(e) which requires filing not merely possessing.

Majority then claims "the judge had the Information during the arraignment[.]" Really? The very transcript quotations indicate he was unaware of it. The best answer was that it was back on his desk where it was placed by the State.

I take offense of the accusation that I have invented facts. No claims, no assumptions, hardly a logical inference was necessary to read the transcript quoted in the conference opinion.

AMUNDSON, J., joins this special writing and I am authorized to so state.