2003 SD 43

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Timothy TAECKER, Defendant and Appellant.**

No. 22441.

Supreme Court of South Dakota.

Considered on Briefs Jan. 13, 2003.

Decided April 16, 2003.

Lawrence E. Long, Attorney General, Douglas Kettering, Special Assistant Attorney General, Yankton, South Dakota, Attorneys for plaintiff and appellee.

Jerry L. Pollard of Kabeiseman & Pollard, Yankton, South Dakota, Attorneys for defendant and appellant.

PER CURIAM.

[¶ 1.] Timothy Taecker appeals his jury conviction for felony nonsupport of a child. He claims that the trial court erred in denying his motion for acquittal; the State improperly calculated child support arrearages; and, the trial court failed to recognize and properly instruct the jury that nonsupport of a child is a specific intent crime. We affirm.

### FACTS AND PROCEDURE

[¶ 2.] On September 10, 2001, the State filed a complaint against Taecker alleging that he "did intentionally omit without lawful excuse to furnish necessary food, clothing, shelter, medical attendance or other remedial care or other means of support for his children *by leaving the State of South Dakota.*" (emphasis added). The amended information, filed April 23, 2002, charged that:

> That on or about the 4th day of December 1996, an Order was filed for record in Yankton County, state of South Dakota, wherein the Defendant was ordered to pay the sum of $540.00 per month for monthly child support and an additional $60.00 towards child support arrears. That the defendant, Timothy Taecker did commit the public offense of NON-SUPPORT OF CHILD BY PARENT (SDCL 25–7–16) in that he as parent of a minor child, to-wit:, Andrew S. Taecker, did intentionally omit without lawful

excuse to furnish necessary food, clothing, shelter, medical attendance or other remedial care or other means of support for his children *by leaving the State of South Dakota.* (emphasis added).

[¶ 3.] Prior to a divorce in the State of California, Taecker had four children with his wife Jeanine Taecker (hereinafter Jeanine or Mother). The couple separated in 1989 and Jeanine and her four children moved to South Dakota. In 1993 a South Dakota court entered an order to show cause as to why Taecker was not paying child support pursuant to the original California decree. At that time the trial court found that Taecker moved to South Dakota and that his failure to pay was willful. In 1996 another show cause hearing was held in South Dakota wherein an order was entered requiring Taecker to pay $540 per month in support and $60 per month in arrearages. At the time of trial there remained only one child subject to this child support order, Andrew. One child had died; the two others were over age 19.[1]

[¶ 4.] Jeanine testified that Taecker lived in South Dakota in 1996 and that he did not leave South Dakota until he was required to serve time in jail. She also testified that as of December 2000 Taecker furnished no support for Andrew other than limited payments and some medical coverage. The State also offered evidence at trial of $49,206.47 owing in arrearages in 1996, the year of Taecker's departure from the state.

[¶ 5.] In addition, there was a 1995 tax return in which Taecker indicated that he lived in Yankton, South Dakota. He was employed by three South Dakota construction firms in 1996. He obtained a South Dakota driver's license and registered four motor vehicles in South Dakota. Taecker testified that he left South Dakota in 1996. He also testified "I left here so I could pay the child support" and sought job opportunities in Nevada and California. From December 1996 until the date of trial there was $7,078.73 owing in arrearages.

[¶ 6.] After leaving South Dakota Taecker had been employed and resided in California and Nevada. Taecker asserted that he could not pay child support because of illness, weather interfering with his occupation and the subsequent loss of his job. On one occasion, Taecker sought to have his support obligation modified but, instead, that proceeding resulted in a support increase.

[¶ 7.] Taecker does not dispute the State's characterization of his earnings and that he missed support payments in 2001. He does dispute that he was ever a resident of South Dakota; that his child was not provided with the necessities of life; the amount of arrearages; or that he had the requisite intent not to support his child required by SDCL 25–7–16.

## ANALYSIS

### ISSUE ONE

[¶ 8.] **Whether the trial court erred in refusing Taecker's motion for acquittal on the grounds that State failed to show that he left the State during a violation as required by SDCL 25–7–16.**

[¶ 9.] SDCL 25–7–16 provides in pertinent part:

A parent of a minor child who intentionally omits without lawful excuse to furnish necessary food, clothing, shelter, medical attendance or other remedial care, or other means of support for the person's child is guilty of a Class 1 misdemeanor. If a parent, during a violation, leaves the state and is absent for

---

1. Taecker came to South Dakota to be with one of his sons prior to his son's passing.

more than thirty days, he is guilty of a Class 6 felony....

The Court has recognized that "[b]y the plain reading of the statute, the elements of the offense of felony nonsupport of a child are:

(1) a parent who intentionally omits, (2) without lawful excuse, (3) to furnish necessary food, clothing, shelter, medical attendance, or other remedial care, or (4) other means of support, and (5) is absent from the state for more than thirty days."

*State v. Rome,* 426 N.W.2d 583, 584 (S.D. 1988). However, there is an additional element applicable here, though not at issue in *Rome;* the parent must *leave the state during a violation. See* SDCL 25–7–16. It is the existence of this element of the offense that is disputed by Taecker.

■ [¶ 10.] Taecker contends that there was no evidence offered at trial that established he was either a resident of the state or that he was present in the state and left during a violation. In response, the State contends that it was only required to prove that the defendant was outside the State of South Dakota and remained that way for thirty days without providing support. The State's position ignores the plain requirement of SDCL 25–7–16 that the parent must leave *during a violation.* A plain reading of the statute reveals that the "violation" necessary to create a felony offense refers to the first

sentence of SDCL 25–7–16, setting forth the misdemeanor charge of nonsupport.[2] Therefore, misdemeanor nonsupport can rise to the level of a felony if the parent leaves the state during a violation and is absent for at least thirty days.

[¶ 11.] The State errantly argues that any parent that is either a nonresident or has left the State for thirty days, no matter the parent's status under the support provision at the time of departure, is guilty of a felony. This argument is untenable and contrary to the legislative dictate.[3]

[¶ 12.] It is clear that for a felony conviction under SDCL 25–7–16 the State is required to establish that a parent, during a period when they intentionally omit, without lawful excuse, to furnish necessary food, clothing, shelter, medical attendance, other remedial care, or other means of support for the person's child (thus creating a "violation"), thereafter leaves the state for more than thirty days. To accept State's position would require that nonsupport by a nonresident be automatically classified as a felony because that person, by definition, is absent from the state. In essence, State's argument omits the provision requiring a violation to precede the requisite absence to create a felony offense. This is contrary to the plain terms of the statute, requiring a defendant to leave the state "during a violation." The statute does not mandate that a parent outside of the state automatically face felony prosecution for nonsupport.

---

2. The jury was instructed on alternative counts of either nonsupport of a child or felony nonsupport of a child.

3. Another thirty day provision is present in the legislative definition relating to the obligations of a parent for support. SDCL 25–7–6.1 refers to a parent's "continued absence from the home" and provides:

[C]ontinued absence from the home means that the parent or child is physically absent from the home for a period of at least thirty

consecutive days, and that the nature of the absence constitutes family dissociation because of a substantial severance of marital and family ties and responsibilities, resulting in the child losing or having a substantial reduction of physical care, communication, guidance and support from a parent. This definition intimates at the reasoning the legislature had in creating a felony offense for a parent who leaves the state during a violation.

■ [¶ 13.] Despite State's position on appeal, the jury was properly instructed that:

The elements of the crime of felony non-support of a child, each of which the state must prove beyond a reasonable doubt, are that at the time and place alleged:

(1) That the defendant was the parent of Andrew S. Taecker

(2) That the defendant intentionally failed to furnish necessary (food or clothing or shelter or medical attendance or other remedial care or other means of support) for Andrew S. Taecker.

(3) That the defendant, *during a violation, left the state and was absent more than 30 days.*

"Jury instructions are reviewed as a whole and are sufficient if they correctly state the law and inform the jury." *Parker v. Casa Del Rey–Rapid City*, 2002 SD 29, ¶ 5, 641 N.W.2d 112. This jury instruction sets forth the requisite elements for a felony conviction under SDCL 25–7–16.

■ [¶ 14.] We review a motion for judgment of acquittal by deciding whether the State set forth sufficient evidence from which the jury could reasonably find the defendant guilty of the crime charged. *State v. Holzer*, 2000 SD 75, ¶ 10, 611 N.W.2d 647, 650. In addition:

In determining the sufficiency of the evidence to constitute the crime, the question presented is whether there is sufficient evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt; in making this determination the Court will accept that evidence, and the most favorable inferences fairly drawn therefrom, which will support the verdict. In this review we will not resolve conflicts in the evidence, pass on the credibility of witnesses, or weigh the evidence. No guilty verdict will be set aside if the evidence, including circumstantial evidence and reasonable inferences drawn there from, sustains a reasonable theory of guilt.

*Id; State v. Buchholz*, 1999 SD 110, ¶ 33, 598 N.W.2d 899, 905 (quoting *State v. Knecht*, 1997 SD 53, ¶ 22, 563 N.W.2d 413, 421).

■ [¶ 15.] The jury was presented with evidence that Taecker resided in the State of South Dakota until 1996 when both his testimony, and his former wife's testimony, confirm that he left in that year. In addition, at the time of his departure from South Dakota the evidence established that he owed significant arrearages. Concerning nonsupport, Taecker's former wife testified as follows:

Q: Since December of 2000 I believe this Exhibit shows that there have been very few, if any, child support payments made. Has he helped you in any way with the children other than the few miscellaneous payments that are reflected here?

A: He never has helped.

Q: Now did he—would he send any gifts or anything at Christmas or anything for the kids?

A: Once Nicholas died, he ignored the other three children when it came to Christmas and birthdays.

Q: Did he ever, at the start of school in the fall, buy like Nike's or any tennis shoes or help with—

A: Nothing. Nothing. Nothing. Nothing. Nothing ever.

Q: So anything that the children received was as a result of the benefit of your labors?

A: Correct.

Q: He never rendered any assistance whatsoever?

A: I am trying to even give him the benefit of the doubt and remembering one single time in 13 years, but there is nothing.

While Taecker contends that he was not a resident and, conversely, never made himself absent from the state, there is sufficient evidence to support a contrary conclusion. There was sufficient evidence presented that Taecker did in fact absent himself from the state during a violation to support the jury's finding of felony nonsupport beyond a reasonable doubt.

## ISSUE TWO

[¶ 16.] **Whether the trial court erred in refusing Taecker's motion for acquittal on the grounds that the minor child had not gone without food, clothing, shelter or other necessities because of Mother's care of the children.**

 [¶ 17.] Taecker relies on our decision in *State v. Rome*, 426 N.W.2d 583, to assert that because the minor child that he was required to support by court order had been otherwise supported by Mother; he cannot be prosecuted for nonsupport of a child. In *Rome*, this Court determined that because Father had cared for the child and provided the necessities of life while he held the child from Mother following a kidnapping, the conviction for nonsupport of the child could not stand. *Rome*, 426 N.W.2d at 585. The State did not prove that Rome, as the father, failed to provide for the necessaries of the child. *Id.* Taecker asserts that this holding bars his conviction because even if he, as father, failed to provide the necessaries of life for the child, Mother did; therefore the child's care was not a burden on the State. This reasoning is unsupported in both law and fact.

[¶ 18.] Obviously, the facts in *Rome* are distinguishable as that father, while on the run, supported his child with the necessar-

ies of life. *See id.* That holding is inapplicable here. As a matter of law, the statutory framework for criminal nonsupport clearly rejects Taecker's contention. SDCL 25–7–20 provides:

> **Parent's criminal liability not relieved by other parent's custody or support provided by others.** This chapter may not be construed to relieve one parent from the criminal liability defined in § 25–7–16 for an omission because the other parent of the child is legally entitled to custody of the child *nor because the other parent of the child, or any other person, or organization, voluntarily or involuntarily furnishes necessary food, clothing, shelter, medical attendance, other remedial care, or other means of support for the child.*

SDCL 25–7–20 (emphasis added.) This argument is without merit.

## ISSUE THREE

[¶ 19.] **Whether the State improperly calculated Taecker's child support arrearages.**

 [¶ 20.] Taecker contends that the State improperly calculated the amount of arrearages owing and the amounts presently due for child support. His argument is that because the support order was entered when there were four minor children it should have been modified so as to reduce the amounts due in order to properly reflect one child, the child that was the subject of this nonsupport prosecution.

[¶ 21.] This Court has previously determined that a support order in a single lump sum may represent more than one child without violating our statutory scheme. *See Radigan v. Radigan*, 465 N.W.2d 483, 485 (S.D.1991). This Court has also observed that as children no longer meet requirements for support based on factors such as age and circumstance, then

a parent should seek modification to reflect those changing circumstances. *Id.* Taecker asserts that the *Radigan* holding should be overturned. There is no reason to revisit the *Radigan* holding in this case.

[¶ 22.] Taecker does not dispute that there is, and has been, child support owing. In addition, SDCL 25–7–19 declares that a decree for the support of a child is irrelevant to a proceeding for criminal nonsupport. As such, this is not the forum to attempt to modify a child support order. What is relevant here to maintain a criminal conviction is whether the father failed to provide his legally mandated child support.

## ISSUE FOUR

[¶ 23.] **Whether criminal nonsupport is a specific intent or a general intent crime.**

[¶ 24.] The trial court refused Taecker's request to provide an instruction to the jury on specific intent. Taecker contends that criminal nonsupport is a specific intent crime as the statute requires a parent to "intentionally omit" support. SDCL 25–7–16. We have not previously addressed the *mens rea* requirement of SDCL 25–7–16.

[¶ 25.] With that said, "[t]his Court over the past several years has repeatedly analyzed the specific intent/general intent dichotomy. The use of the terms 'intentionally' or 'knowingly' merely designate that the culpability required is something more than negligence or recklessness." *State v. Heftel,* 513 N.W.2d 397, 400 (S.D.1994) (string citations omitted). "[M]ere use of that term (intentionally) does not designate an additional mental state beyond that accompanying the act." *State v. Huber,* 356 N.W.2d 468, 473 (S.D. 1984). "Whether or not a crime is a general intent or specific intent crime depends upon its legislative enactment." *State v.*

*Shilvock–Havird,* 472 N.W.2d 773, 776 (S.D.1991).

Specific intent has been defined as meaning some intent in addition to the intent to do the physical act which the crime requires, while general intent means an intent to do the physical act-or, perhaps, recklessly doing the physical act-which the crime requires.

*State v. Barrientos,* 444 N.W.2d 374, 376 (S.D.1989).

[¶ 26.] To establish a violation of SDCL 25–7–16 the State was required to prove that Taecker intentionally omitted, without lawful excuse, to furnish necessary food, clothing, shelter, medical attendance, other remedial care or other means of support for his child. SDCL 25–7–16 requires that a parent's failure to provide support be an intentional act without lawful excuse. The legislature's use of the word "intentionally" does not "designate an additional mental state beyond that accompanying the act." *See Huber,* 356 N.W.2d at 473 (holding that the legislature's use of the word "intentionally" when defining the crime of eluding police does not create a specific intent crime). Instead, the State was required to prove Taecker committed this act of omission without lawful excuse. State was not required to prove the act of omission plus a specified intent. Therefore, criminal nonsupport is a general intent crime and the jury was properly instructed.

[¶ 27.] Affirmed.

[¶ 28.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, ZINTER, and MEIERHENRY, Justices, participating.