2005 SD 122

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Brian Donald SCHOUTEN, Defendant and Appellant.**

No. 23462.

Supreme Court of South Dakota.

Considered on Briefs on Aug. 30, 2005.

Decided Dec. 14, 2005.

SDCL 22–18–26 for spitting on a correctional officer. Schouten pleaded not guilty and attempted to introduce evidence of diminished capacity at his jury trial, contending SDCL 22–18–26 is a specific intent crime. The trial court determined the crime is one of general intent, and granted the State's motion in limine to bar Schouten from presenting evidence of diminished capacity. Schouten was found guilty and sentenced to one year in the State Penitentiary to be served consecutively to his current sentence, with no allowance for good time. Schouten appealed the conviction contending that the trial court erred when it ruled SDCL 22–18–26 is a general intent crime, and that the sentence imposed by the trial court was disproportionate to the crime committed as it resulted in an effective sentence of twenty-nine years. We affirm.

## FACTS AND PROCEDURE

[¶ 2.] On February 1, 1996, Schouten was convicted on three counts of fourth degree burglary, two counts of third degree burglary, two counts of second degree burglary and one count of first degree burglary. His prior criminal record included a 1990 conviction for third degree burglary, and a 1992 conviction for aggravated assault. Schouten was sentenced to fifty years in the South Dakota State Penitentiary for the 1996 burglary convictions.

[¶ 3.] On September 10, 2003, Schouten was housed in section five of the Jamison Annex of the State Penitentiary. During the evening hours, Correctional Officers John Heesch and Darrin Ewer were moving from cell to cell distributing supplies to inmates from a cart. As Heesch and Ewer entered section five, Schouten removed his pillow from the pillow case and threw the pillow case against the door of his cell. Ewer approached the cell and handed Schouten some items from the cart.

Lawrence E. Long, Attorney General, Gary Campbell, Assistant Attorney General, Pierre, South Dakota, Attorneys for plaintiff and appellee.

Michelle M. Thomas–Pena, Minnehaha County Public Defender's Office, Sioux Falls, South Dakota, Attorneys for defendant and appellant.

GILBERTSON, Chief Justice.

[¶ 1.] While incarcerated at the State Penitentiary, Brian Donald Schouten was charged with one count of Assault by Inmate—Intentionally Causing Contact with Bodily Fluids or Human Waste under

Schouten then asked for a cup, to which Ewer replied "No, we don't have any.cups on the cart but as soon as we are done we'll get you one." Ewer proceeded to the next cell. Schouten became agitated and upset. Heesch approached Schouten's cell and tried to calm him down. Heesch stated the officers would bring him a cup after they finished passing supplies.

[¶ 4.] Schouten became more upset and began ranting and raving, and said "[t]hat's the story of this fucking operation." Schouten then spat on Heesch and yelled, "I'll fucking see you in Chicago." Heesch was standing a foot and a half to two feet away from the cell door when Schouten spat at him. Heesch observed the spit leave Schouten's mouth and fly toward him through the mesh of the cell door. Heesch moved his head back and to the left, but the spit struck him on the right cheek in two places. Heesch collected the spit using swabs and placed it in an evidence bag. The swabs were processed at the state criminal lab and found to be human saliva.

[¶ 5.] Schouten was charged with violating SDCL 22–18–26 for spitting on a correctional officer, also known as the crime of sliming. A Habitual Offender Information was filed based on Schouten's ten previous felony convictions. Against advice of counsel, Schouten did not enter a plea of not guilty by reason of insanity, but rather chose to enter a plea of not guilty.

[¶ 6.] At the jury trial on August 3, 2004, Schouten attempted to introduce testimony from Dr. David Bean, a psychiatrist who performed a forensic evaluation on Schouten that consisted of a personal interview and a review of his medical and treatment records following the incident. According to Schouten's court appointed counsel, Bean's testimony would not be used as part of an insanity defense, but rather to show diminished capacity and a resulting inability to form the requisite intent to violate SDCL 22–18–26 due to mental illness. The trial court ruled that SDCL 22–18–26 is a general intent crime for which diminished capacity is not a relevant defense, and granted the State's motion in limine to exclude the testimony.

[¶ 7.] After a verdict of guilty was returned by the jury, Schouten asked for immediate sentencing and the State moved to dismiss the Habitual Offender Information. The trial court then sentenced Schouten to one year on the charge of sliming. As a consequence of Schouten's conviction under SDCL 22–18–26, he is not eligible for parole until he has served the one year sentence consecutively to the twenty-eight years remaining on his sentence for the 1996 felony burglary convictions, with no good time credit allowed.

[¶ 8.] Schouten raises two issues on appeal:

1. Whether the trial court erred when it ruled SDCL 22–18–26 is a general intent crime.

2. Whether the imposition of a one year sentence for violation of SDCL 22–18–26 was disproportionate to the crime committed and therefore constituted cruel and unusual punishment when it resulted in an effective sentence of twenty-nine years due to Schouten's prior sentence for felony burglary.

**STANDARD OF REVIEW**

[¶ 9.] "Statutory interpretation and application are questions of law." *Block v. Drake,* 2004 SD 72, ¶ 8, 681 N.W.2d 460, 463(citing *Steinberg v. State Dept. of Military Affairs,* 2000 SD 36, ¶ 6, 607 N.W.2d 596, 599). Conclusions of law are reviewed by this Court under the de novo standard, with no deference to the circuit court. *Id.* (citing *City of Deadwood*

*v. Summit, Inc.,* 2000 SD 29, ¶ 9, 607 N.W.2d 22, 25). Statutory construction is employed to discover the true intent of the legislature in enacting laws, which is ascertained primarily from the language used in the statute. *State v. Myrl & Roy's Paving, Inc.,* 2004 SD 98, ¶ 6, 686 N.W.2d 651, 653(citing *Martinmaas v. Engelmann,* 2000 SD 85, ¶ 49, 612 N.W.2d 600, 611). We give words their plain meaning and effect, and read statutes as a whole, as well as enactments relating to the same subject. *Id.*

## ANALYSIS AND DECISION

**[¶ 10.] Whether the trial court erred when it ruled SDCL 22–18–26 is a general intent crime.**

[¶ 11.] Schouten argues that SDCL 22–18–26 defines a specific intent crime, and that he therefore was entitled to offer a defense of diminished capacity through Bean's testimony. We have not had occasion to address the *mens rea* requirement of SDCL 22–18–26. However, we have addressed the dichotomy of specific intent/general intent crimes several times under other statutes. *See State v. St. John,* 2004 SD 15, ¶ 13, 675 N.W.2d 426, 428 (holding aggravated assault under SDCL 22–18–1.1(3) defines a general intent crime despite statutory language making an attempt an element of the offense); *State v. Taecker,* 2003 SD 43, ¶ 26, 661 N.W.2d 712, 718 (holding "intentionally omits" within SDCL 25–7–16 does not designate an additional mental state beyond that accompanying the act); *State v. Heftel,* 513 N.W.2d 397, 400 (S.D.1994) (holding the term "intentionally merely designates that the culpability required is something more than negligence or recklessness"); *State v. Barrientos,* 444 N.W.2d 374, 376 (S.D.1989) (holding "knowingly causes" in aggravated assault statute requires no mental state beyond

the "knowledge" which must accompany the act of causing the bodily injury); *State v. Balint,* 426 N.W.2d 316, 318 (S.D.1988) (holding "intentionally injures" language in SDCL 22–34–1 requires no additional mental state beyond that accompanying the injurious act); *State v. Huber,* 356 N.W.2d 468, 473 (S.D.1984) (holding "[m]ere use of the term intentionally does not designate an additional mental state beyond that accompanying the act"). In order to determine whether a crime requires specific intent, or merely general intent, the legislative enactment that proscribes the conduct must be examined. *State v. Shilvock–Havird,* 472 N.W.2d 773, 776 (S.D.1991).

[¶ 12.] In the instant case, Schouten was convicted under SDCL 22–18–26, which provides:

Any convicted person under the jurisdiction of the Department of Corrections who *intentionally throws, smears, or otherwise causes* blood, emesis, mucus, semen, excrement, or human waste to come in contact with a Department of Corrections employee, or visitor, or volunteer authorized by the Department of Corrections, or person under contract assigned to the Department of Corrections is guilty of a Class 6 felony.

*(emphasis added).* In order to ascertain whether SDCL 22–18–26 is a general or specific intent crime, we must also examine the definition of "intentionally" as it is used in the criminal code, and in SDCL 22–18–26.

[¶ 13.] SDCL 22–1–2(1)(b) codifies the common law distinction between specific intent and general intent crimes and provides in relevant part:

The words "intent, intentionally" and all derivatives thereof, import *a specific design* to cause a certain result *or,* when the material part of a charge is the violation of a prohibition against conduct

of a certain nature, *regardless of what the offender intends to accomplish thereby,* a specific design to engage in conduct of that nature[.]

(emphasis added). Specific intent crimes require that the offender have "a specific design to cause a certain result." *See* SDCL 22–1–2(1)(b). General intent crimes only require that the offender "engage in conduct" that is prohibited by the statute, "regardless of what the offender intends to accomplish." *Id.* We have defined the two terms as follows: "Specific intent has been defined as meaning some intent in addition to the physical act which the crime requires, while general intent means an intent to do the physical act—or, perhaps, recklessly doing the physical act—which the crime requires." *Taecker,* 2003 SD 43, ¶ 25, 661 N.W.2d at 718 (quoting *Barrientos,* 444 N.W.2d at 376).

[¶ 14.] Although our Legislature relied heavily on the Model Penal Code when it revised the South Dakota criminal code in 1976, it did not exclude references to general and specific intent. *See* Richard D. Casey, The 1976 Revision of the South Dakota Criminal Code: Putting the Field Code Out to Pasture, 22 SD LRev 98, 104 n. 39 (1977) (noting that South Dakota followed the lead of several states in adopting the different levels of culpability, which originated from Model Penal Code § 2.02(2)). Our criminal code culpability hierarchy, in descending order, includes: "malice, maliciously;" "intent, intentionally;" "knowledge, knowingly;" "reckless, recklessly;" and "negligent, negligently." SDCL 22–1–2(1)(a)–(e).

[¶ 15.] Justice Meierhenry's special writing correctly observes that due to ambiguity and confusion in defining and applying general and specific intent, the Model Penal Code developed an alternative method to analyze *mens rea. United States v. Bailey,* 444 U.S. 394, 403, 100 S.Ct. 624, 631, 62 L.Ed.2d 575, 586 (1980). The alternative method under the Model Penal Code utilizes a hierarchical approach for culpability that specifically excludes references to general and specific intent. *Id.* The Model Code hierarchy, in descending order, uses the terms "purpose," "knowledge," "recklessness," and "negligence." *Id.* at 403–04, 100 S.Ct. at 631, 62 L.Ed.2d at 586–87 (citing LaFave & Scott, Handbook on Criminal Law § 28, 194 (1972); Model Penal Code § 2.02 (1962)). While it is true that the use of the Model Code's definition of "purpose" [1] would have eliminated the present ambiguity, the South Dakota Legislature elected not to adopt that provision of the Model Penal Code. The retention of "intent" and "intentionally" in our criminal code preserved the ambiguity of the general/specific intent dichotomy in our criminal code.

[¶ 16.] In the instant case, Schouten was convicted under SDCL 22–18–26. SDCL 22–18–26 is a "prohibition of conduct of a certain nature" as defined by SDCL 22–1–2(1)(b). SDCL 22–18–26 specifically prohibits the conduct of intentionally throwing, smearing, or otherwise causing human waste to come into contact with a Department of Corrections employee. It requires the offender to intend to throw, smear or otherwise cause human waste to

---

1. The Model Penal Code defines "purposely" as follows:

 A person acts purposely with respect to a material element of an offense when:
 (i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and

 (ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.
 Model Penal Code § 2.02(2)(a).

come into contact with a Department of Corrections employee. The statute lacks language requiring a specific design or purpose for doing the prohibited. Therefore, it is a general intent crime.

 [¶ 17.] In contrast, SDCL. 22–18–26.1 prohibits the sliming of "law enforcement officers" by "any person," and provides in relevant part: ·

> Any person who, *with the intent to assault,* throws, smears, or causes human blood, emesis, mucus, semen, excrement, or human waste to come in contact with a law enforcement officer as defined in subdivision 22–1–2(22), a firefighter, a court services officer or designee, or an emergency medical technician, while performing official duties or actions, is guilty of a Class 1 misdemeanor.

(emphasis added). The two statutes are similar with the exception of the "intent to assault" language in SDCL 22–18–26.1. The inclusion of that language in SDCL 22–18–26.1 indicates the Legislature designed the statute so as to require a "specific design to cause a certain result." In the case of SDCL 22–18–26.1 the "certain result" is to cause an assault. Therefore, SDCL 22–18–26.1 is a specific intent crime that requires both the intent to cause an assault and the act of throwing or smearing blood, body fluids or waste that comes into contact with a law enforcement officer.[2]

 [¶ 18.] A defense of diminished capacity is relevant to a specific intent crime, but not to a general intent crime. *United States v. Kimes,* 246 F.3d 800, 806

(6thCir.2001) (citing *United States v. Gonyea,* 140 F.3d 649, 650 (6thCir.1998) (citing *United States v. Fazzini,* 871 F.2d 635, 641 (7thCir.1989); *United States v. Twine,* 853 F.2d 676, 679 (9thCir.1988). In *Kimes,* "the defendant chose not to pursue an insanity defense, however, offering the testimony [on diminished capacity] only to 'negate the mental state required for the offense....'" *Id.* However, because the crime charged was a general intent crime the proffered testimony on diminished capacity was not relevant and therefore not admissible. *Id.*

[¶ 19.] In the instant case, the State was required to prove that Schouten intentionally spat and caused his spit to contact the officer as a result of his physical act without lawful excuse. There is no language in the statute that required the State to prove "an additional mental state beyond that accompanying the act" itself. *See Taecker,* 2003 SD 43, ¶ 26, 661 N.W.2d at 718 (quoting *Huber,* 356 N.W.2d at 473). Therefore, the criminal act of sliming a correctional officer is a general intent crime and the trial court properly granted the State's motion in limine to exclude Bean's testimony concerning Schouten's diminished capacity as it was not relevant to the crime charged.

[¶ 20.] We find Issue 2 to be without merit. We affirm.

[¶ 21.] KONENKAMP and ZINTER, Justices, concur.

[¶ 22.] SABERS and MEIERHENRY, Justices, concur specially.

---

2. As we stated in *State v. Nagel,* 279 N.W.2d 911, 915 (S.D.1979), "[t]he legislature may forbid the doing of an act and make its commission a crime without regard to the intent or knowledge of the doer." The Legislature may also make a criminal act "a specific intent crime under one set of circumstances, and a general intent crime under a different set of circumstances." *Shilvock–Havird,* 472 N.W.2d at 776–77 (citing *United States v. Lar-* *dieri,* 497 F.2d 317 (1974), *on rehearing,* 506 F.2d 319 (3rd Cir.1974); *United States v. Stassi,* 443 F.Supp. 661, (D.C.N.J.1977)). This is an instance of our Legislature requiring specific intent under SDCL 22–18–26.1 for any person who slimes a law enforcement officer, but requiring only general intent when the act is committed by a convicted person under the jurisdiction of the Department of Corrections.

SABERS, Justice (concurring specially).

[¶ 23.] I agree that we should review the trial court's evidentiary ruling based on the statutory definition of "intent" and "intentionally" contained in SDCL 22–1–2(1)(b) and that the definition of terms established by the South Dakota Legislature in chapter 22–1 completely replaces any prior inconsistent case law, specifically the concept of general and specific intent crimes.

MEIERHENRY, Justice (concurring specially).

[¶ 24.] I agree that SDCL 22–18–26 is a crime for which "the material part of the charge is a violation of a prohibition against conduct of a certain nature" under SDCL 22–1–2(1)(b). I disagree, however, that the specific/general intent dichotomy remains a part of our legislative scheme. By the legislative adoption of the culpable mental states in SDCL 22–1–2(1) based upon the Model Penal Code, the prior distinction between general and specific crimes is no longer appropriate. The Legislature defined intent not as general or specific, but in matters of degree. *See* SDCL 22–1–2(1). That statute sets forth the degrees of "intent with which an act is done or omitted" as including "malice," "intent," "knowledge," "reckless," and "negligence." Each degree of intent is specifically defined. It is under these definitions that we should analyze culpability.

[¶ 25.] The United States Supreme Court in *United States v. Bailey* discussed at length the dichotomy of general verses specific intent. 444 U.S. 394, 403–09, 100 S.Ct. 624, 631–34, 62 L.Ed.2d 575 (1980). The Court stated that the analysis no longer applies to federal crimes where Congress enacted into law specific degrees of culpability. *Id.* at 406, 444 U.S. 394, 100 S.Ct. at 632, 62 L.Ed.2d 575. When assigning levels of culpability, the Court said:

[When] dissecting [a criminal statute] and assigning a level of culpability to each element ... courts obviously must follow Congress' intent as to the required level of mental culpability for any particular offense. Principles derived from common law as well as precepts suggested by the American Law Institute must bow to legislative mandates.

*Id.* So too should our common law and prior analysis bow to our legislative mandates. The arcane pigeonholing into general or specific intent is no longer relevant.