#27484-r-JMK

**2016 S.D. 31**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

   v.

JEREMIAH BADIT LIAW,                      Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE LAWRENCE E. LONG
Judge

* * * *

MARTY J. JACKLEY
Attorney General

PATRICIA ARCHER
Assistant Attorney General
Pierre, South Dakota                      Attorneys for plaintiff
                                          and appellee.


BEAU J. BLOUIN
Minnehaha County
  Public Defenders Office
Sioux Falls, South Dakota                 Attorneys for defendant
                                          and appellant.

* * * *

ARGUED ON MARCH 22, 2016

OPINION FILED **04/06/16**

#27484

KERN, Justice

[¶1.]  Jeremiah Liaw was convicted by a jury of second-degree kidnapping and criminal trespass.  During the trial, Liaw requested instructions defining specific intent and voluntary intoxication.  The trial court held that second-degree kidnapping was a general intent crime, and refused the instructions.  Liaw was convicted of both offenses and appeals.  We reverse and remand.

**Background**

[¶2.]  Angela Calin is a resident of Sioux Falls.  On October 24, 2014, she was at her home with friends Jean Wolff and Nikolai Nidalko, an elderly neighbor.  Calin was inside the home while her friends were outside sitting on her back porch.  Calin heard shouting and looked out the window to see Liaw standing in her driveway.  He was not speaking English, but was uttering loud angry noises.  Nidalko and Wolff were shouting at Liaw to leave the property, but Liaw refused and did not respond to their commands.  Calin later testified that she feared Liaw would harm Nidalko, who was 75 years old and had knee problems.  Calin walked outside and stood between the two men in an attempt to calm Liaw.  At this point, Liaw grabbed her by the hand and would not let go.  Calin, age 57, is much shorter than Liaw.  Wolff was able to give Calin a cordless phone from inside the house and Calin dialed 911 while Liaw held onto her.  Liaw was now holding her with both his hands—one gripping her arm and his other around her neck and shoulder.  Calin was able to give her address and name to dispatch before Liaw drug her away from her house, and the connection on the cordless phone was lost.

[¶3.]        Although terrified, Calin tried to calm Liaw down.  Calin testified that Liaw would respond to her, but she did not understand him.  After pulling her about a block, Liaw attempted to shove Calin into oncoming traffic.  She was able to avoid being hit by shifting in the opposite direction.  She observed Liaw cross the street and quickly walk down the block.  She followed Liaw, and saw him enter a grocery store.  After he left the store, she went inside and again called 911, relaying more information about what had just happened.  Calin told the dispatcher that Liaw had "scared the hell out of [her]."

[¶4.]        Officer Christopher Jasso was the first to arrive at Calin's house, where Wolff and Nidalko had remained.  Wolff was frantic with worry about Calin and described the events to Officer Jasso.  A few moments later, Officer Jasso noticed Liaw standing in a yard a few houses away.  Officer Jasso approached Liaw and observed that his "balance was off and his speech was slurred."  Officer Jasso helped Liaw sit down on the curb so he could ask Liaw about Calin.  The two had the following exchange:

> **Officer Jasso**: What did you do with the woman buddy?
> **Liaw**: Huh?
> **Officer Jasso**: What did you do with the old lady that you were walking with?
> **Liaw**: What lady?
> **Officer Jasso**: The old lady?
> **Liaw**: Did I walk with old lady (inaudible)?
> **Officer Jasso**: Yeah you were over here.
> **Liaw**: Huh, I'm done (repeated multiple times).
> **Officer Jasso**: What do you mean you are done?
> **Liaw**: Did I walk with old lady?
> **Officer Jasso**: Yeah, were you over here?

> **Liaw**: When.
>
> **Officer Jasso**: A little bit ago.
>
> **Liaw**: Did I?
>
> **Officer Jasso**: Yes I am asking you.
>
> **Liaw**: Somebody walking by themselves you know.
>
> **Officer Jasso**: Ok were you walking with a little old lady wearing blue jeans?
>
> **Liaw**: inaudible.

[¶5.] Officer Michelle Deschepper arrived and began speaking with Liaw. She testified that Liaw was highly intoxicated. Liaw was unable to provide his address or describe where he lived. He gave the officers a wallet, and told the officers it belonged to his uncle. Officer Deschepper gave Liaw a portable breath test, which registered .38. Officer Deschepper believed Liaw was so intoxicated that she would have to take him to the emergency room for medical clearance before taking him to a detoxification facility.

[¶6.] Liaw was ultimately arrested and charged with kidnapping in the first degree—terrorizing victim (SDCL 22-19-1(3)) and kidnapping in the second degree—injury or terrorize (SDCL 22-19-1.1(3)).[1] Liaw did not testify at trial. He presented expert testimony from a licensed addiction counselor who testified generally about the effects of alcohol at high levels, increasing tolerance and detoxification. Liaw's defense was based in part on his argument that he was so intoxicated he could not form the requisite "purpose" required by the statute. At the conclusion of the evidence, Liaw proposed a pattern jury instruction defining

---

1. Liaw was also charged with aggravated assault and criminal trespass. He was acquitted of the former and sentenced to time already served for the latter.

specific intent. The trial court denied the instruction, ruling that second-degree kidnapping is a general intent crime. Liaw also proposed a pattern jury instruction on voluntary intoxication. The trial court gave a portion of this instruction but eliminated the references to specific intent. The jury convicted Liaw of the charge of second-degree kidnapping.

[¶7.] Liaw appeals the kidnapping conviction raising two issues:

1. Whether second-degree kidnapping is a specific intent crime.

2. Whether the trial court abused its discretion by denying Liaw's proposed jury instructions.

*Whether second-degree kidnapping is a specific intent crime.*

[¶8.] Liaw presents a case of first impression. We have not had occasion to analyze the kidnapping statutes to determine if they require proof of general or specific intent. The trial court noted "the question is not as clear as I would like it," and acknowledged that there was a split of authority in state courts on this question. The court concluded that second-degree kidnapping was a general intent crime. Determining whether a crime requires specific intent depends on the elements of the crime as set forth in the statute. This is an issue of statutory interpretation that we review de novo. *State v. Schouten*, 2005 S.D. 122, ¶ 9, 707 N.W.2d 820, 822.

[¶9.] Liaw argues that second-degree kidnapping is a specific intent crime. SDCL 22-19-1.1 defines kidnapping as, "Any person who unlawfully holds or retains another person with any of the following purposes . . . . To inflict bodily injury on or to terrorize the victim or another[.]" Liaw argues that the language "with any of the

following purposes" indicates that the Legislature intended the crime to require some intent beyond the intent to do the physical act.

[¶10.]    SDCL 22-1-2 defines the various levels of mens rea required to commit a crime. It is primarily patterned after the Model Penal Code (MPC). *See Schouten*, 2005 S.D. 122, ¶ 14, 707 N.W.2d at 824. The statute lists the varying levels of mental culpability in descending order as maliciously, intentionally, knowingly, recklessly, and negligently. SDCL 22-1-2; *see also Schouten*, 2005 S.D. 122, ¶ 14, 707 N.W.2d at 824. While South Dakota has adopted the MPC's mens rea levels, the common law distinction of specific intent versus general intent is still a part of our jurisprudence. *Id.* ("Although our Legislature relied heavily on the MPC when it revised the South Dakota criminal code in 1976, it did not exclude references to general and specific intent."). This common law distinction between general and specific intent crimes is codified at SDCL 22-1-2(1)(b)-(c).[2]

[¶11.]    This Court has incorporated this statutory language when defining mens rea. "Specific intent crimes require that the offender have 'a specific design to cause a certain result.' General intent crimes only require that the offender 'engage in conduct' that is prohibited by the statute, 'regardless of what the offender intends

---

2.    Subdivision (b) of the statute defines "intent, intentionally" and all its derivatives as "a specific design to cause a certain result or, if the material part of a charge is the violation of a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, a specific design to engage in conduct of that nature[.]" Subdivision (c) of the statute defines "knowledge, knowingly" and all its derivatives as "only a knowledge that the facts exist which bring the act or omission within the provisions of any statute. A person has knowledge if that person is aware that the facts exist which bring the act or omission within the provisions of any statute."

to accomplish.'" *Id.* ¶ 13, 707 N.W.2d at 824 (citation omitted). Specific intent requires some intent beyond the intent to do the physical act involved in the crime, whereas general intent requires only an intent to do the physical act. *State v. Taecker*, 2003 S.D. 43, ¶ 25, 661 N.W.2d 712, 718.

[¶12.]    In *Schouten,* we applied the above definitions to the offense of sliming to determine the appropriate mens rea for the offense. 2005 S.D. 122, ¶¶ 14-16, 707 N.W.2d at 824-25. Schouten was convicted of violating SDCL 22-18-26, which provides that one who "*intentionally* throws, smears, spits, or otherwise causes [a bodily fluid] to come into contact with a Department of Corrections employee" is guilty of a felony. Schouten argued that this was a specific intent offense and that he was entitled to present a diminished capacity defense of mental illness to negate the intent. *Schouten*, 2005 S.D. 122, ¶ 11, 707 N.W.2d at 823. In analyzing the question, we began by describing the prohibited conduct—intentionally throwing bodily fluids or waste causing them to come into contact with a DOC employee. *Id.* ¶ 16, 707 N.W.2d at 824-25. The statute required the offender to intend to throw bodily fluids or waste to come into contact with a DOC employee. *Id.* Because the statute lacked language requiring a specific design or purpose for doing the prohibited act we held it was a general intent crime. *Id.*

[¶13.]    To further emphasize the distinction we compared this statute to SDCL 22-18-26.1 which provides, that "[a]ny person who, *with the intent to assault*, throws, smears, or causes [bodily fluids or waste] to come into contact with a law enforcement officer" is guilty of a misdemeanor. *Id.* ¶ 17, 707 N.W.2d at 825 (quoting SDCL 22-18-26.1). We noted that the emphasized language indicated that

the "Legislature designed the statute so as to require a 'specific design to cause a certain result[,]'"—namely an assault. *Id.* (quoting SDCL 22-1-2). We concluded that because the State was required to prove "an additional mental state beyond that accompanying the act itself," it was a specific intent crime. *Id.* ¶ 19, 707 N.W.2d at 825 (quoting *Taecker*, 2003 S.D. 43, ¶ 25, 661 N.W.2d at 718).

[¶14.] SDCL 22-19-1.1 does not prohibit only unlawfully holding or restraining another person. The statute prohibits engaging in such conduct *with the purpose of* inflicting bodily injury or terrorizing the victim. While it is true that none of the levels of mens rea set forth in SDCL 22-1-2 are referenced in the kidnapping statute, the language "any person who unlawfully holds or retains another person *with any of the following purposes*" indicates a higher level of intent than is required to perform the act itself. SDCL 22-19-1.1 (emphasis added).

[¶15.] This interpretation is bolstered by the Supreme Court's holding in *United States v. Bailey*, wherein the Court analyzed mens rea as it applied to the crime of escape from a federal penitentiary. 444 U.S. 394, 403, 100 S. Ct. 624, 631, 62 L. Ed. 2d 575 (1980). In *Bailey*, the Court noted the movement towards the MPC's new culpability levels distinguishing between crimes committed "purposely," "knowingly," and "recklessly". *Id.* at 404, 100 S. Ct. 631. The Court stated, "In a general sense, 'purpose' corresponds loosely with the common-law concept of specific intent, while 'knowledge' corresponds loosely with the concept of general intent." *Id.* at 405, 100 S. Ct. at 632. We made the same distinction in *State v. Rash* where we described the difference between general and specific intent crimes concluding, "[S]pecific intent crimes would be limited only to those crimes which are required to

-7-

be committed either purposefully or knowingly, while general intent crimes would encompass those crimes which can be committed either recklessly or negligently." 294 N.W.2d 416, 417 (S.D. 1980) (internal quotation marks omitted) (quoting *People v. Lerma*, 239 N.W.2d 424, 425 (1976)). The Vermont Supreme Court also reached the same result in *State v. Jackowski*, holding that the common law term "specific intent" correlates to the MPC term of "purposefully," and "general intent" correlates to "knowingly." 915 A.2d 767, 771 (Vt. 2006). The court stated that "a person acts 'purposely' when 'it is his conscious object to engage in conduct of that nature or to cause such a result.'" *Id.* (quoting MPC § 2.02(2)(a)(i)).

[¶16.] Other jurisdictions have explicitly considered whether kidnapping is a specific intent crime. The analysis necessarily turns on the language of each state's respective statute. Mississippi, for example, determined that kidnapping is a general intent crime, but its statutory language is significantly different from South Dakota's. *See Milano v. State*, 790 So. 2d 179, 187 (Miss. 2001). The majority of jurisdictions hold otherwise, analyzing kidnapping as a specific intent crime. *See generally Owens v. State*, 531 So. 2d 2, 13 (Ala. Crim. App. 1986) (holding that kidnapping requires proof of two intents, the intent to abduct and the intent to perform one of six different acts such as ransom, terrorize, etc.); *People v. Dominguez*, 140 P.3d 866, 877, n.6 (Cal. 2006), *as modified* (Nov. 1, 2006) (noting that aggravated kidnapping is a specific intent crime); *Scott v. State*, 521 A.2d 235, 244 (Del. 1987) (holding that kidnapping requires proof that the defendant acted with specific intent under Delaware's kidnapping statute, Del. Code Ann. tit. 11, § 783 (West), which is nearly identical to South Dakota's); *In re C.P.W.*, 213 P.3d

413, 418 (Kan. 2009) (holding that kidnapping requires the general intent to confine a person, but the specific intent to hold the victim for ransom, to facilitate a crime, to interfere with governmental functions, or to terrorize or inflict bodily injury on the victim); *State v. Rodriguez*, 664 S.E.2d 654, 660 (N.C. Ct. App. 2008) (holding that "[k]idnapping is a specific intent crime, and therefore the State must prove that defendant unlawfully confined, restrained, or removed the victim for one of the specified purposes outlined in the statute"); *State v. Avery*, 709 N.E.2d 875, 883 (Ohio Ct. App. 1998) ("The inclusion of the five purposes in [Ohio's kidnapping statute] requires the state to show that the accused had a specific purpose in restraining the victim's liberty.").

[¶17.]       Similarly, we hold that SDCL 22-19-1.1 is a specific intent crime. The State was required to prove beyond a reasonable doubt that Liaw engaged in the prohibited conduct *with the purpose of* inflicting bodily injury or terrorizing the victim. Liaw's proposed instruction would have correctly informed the jury that if the State failed to prove specific intent, then the crime of kidnapping had not been committed.

*Whether the trial court abused its discretion by denying Liaw's proposed jury instruction related to intoxication.*

[¶18.]       We review a trial court's denial of a jury instruction for an abuse of discretion. *State v. St. John*, 2004 S.D. 15, ¶ 8, 675 N.W.2d 426, 427. "But a court has no discretion to give incorrect or misleading instructions, and to do so prejudicially constitutes reversible error." *Kadrmas, Lee & Jackson, Inc. v. Morris*, 2010 S.D. 61, ¶ 5, 786 N.W.2d 381, 382, n.1. "Under our standard of review, we construe jury instructions as a whole to learn if they provided a full and correct

statement of the law." *State v. Frazier,* 2001 S.D. 19, ¶ 35, 622 N.W.2d 246, 259. "An appellant must show not only that a particular instruction was erroneous, but also that it was prejudicial, meaning 'the jury might and probably would have returned a different verdict if [the] instruction had been given.'" *Id.* (quoting *State v. Walton,* 1999 S.D. 80, ¶ 12, 600 N.W.2d 524, 528).

[¶19.]      We have previously addressed the effect of failing to give instructions regarding specific intent. In *State v. Jacquith,* we held that larceny was a specific intent crime, "and the jury should be so instructed." 272 N.W.2d 90, 94 (S.D. 1978). We also addressed the issue in *State v. Soft,* 329 N.W.2d 128, 130 (S.D. 1983). In *Soft,* we reversed a conviction for grand theft where the trial court did not give an instruction on specific intent. *Id.* "We believe the trial court must instruct separately on the specific intent element of grand theft. That instruction was specifically requested by the appellant in the case at hand. Since the trial court failed to so instruct, we reverse the conviction for grand theft." *Id.* This court also recently discussed the issue in *State v. Vargas,* a case involving attempted fetal homicide. 2015 S.D. 72, ¶ 17, 869 N.W.2d 150, 157. In *Vargas,* the trial court failed to instruct the jury that the State must prove beyond a reasonable doubt that the defendant had the specific intent to cause the death of the unborn child. *Id.* The conviction was reversed as this Court could not determine whether the jury found the defendant had the requisite specific intent. *Id.*

[¶20.]      Liaw also argues that the trial court abused its discretion because it failed to properly instruct the jury that voluntary intoxication can negate specific intent. *See State v. Primeaux,* 328 N.W.2d 256, 259 (S.D. 1982). We agree. In this

case, the trial court did not provide the jury with a full and complete statement of the law when it denied Liaw's instruction on how intoxication affects specific intent. Liaw's requested instruction No. 2 would have correctly informed the jury that specific intent was an element of second-degree kidnapping and that Liaw could not be convicted absent proof beyond a reasonable doubt of the specific intent to cause bodily injury or terrorize the victim.[3] While the trial court did give the first two paragraphs of Liaw's requested instruction No. 3 on voluntary intoxication, it excluded all references to specific intent.[4] The last two paragraphs would have

---

3.　Liaw's Proposed Jury Instruction No. 2 concerning specific intent read as follows:

> In the crime of Kidnapping in the Second Degree, there must exist in the mind of the perpetrator the specific intent to inflict bodily injury or to terrorize Angela Calin or another. If specific intent did not exist, this crime has not been committed.

　　This instruction mirrors South Dakota Pattern Jury Instruction 1-12-2.

4.　The trial court only included the first two paragraphs of Liaw's Proposed Jury instruction No. 3 concerning voluntary intoxication:

> There is evidence in this case that the defendant may have been intoxicated at the time of the alleged commission of the offense.

> No act committed by a person while in a state of voluntary intoxication is less criminal because of the intoxicated condition. However, you may consider the fact, if it is a fact, that the accused was intoxicated at the time of the alleged offense in determining the purpose, motive, or intent with which the act was committed, if the act was committed by the defendant.

> An element of the offense of _____ is the defendant had the specific intent to _____. Even though the defendant may have been intoxicated to some degree, if you find that the state has proved beyond a reasonable doubt that the defendant was capable of forming the specific intent to _____ and had such specific intent and that the state has proved beyond a reasonable doubt all other elements of the offense charged, you may find the defendant guilty.

(continued . . .)

correctly instructed the jury on how to consider evidence of intoxication in relationship to Liaw's ability to form specific intent.[5] It is likely that the jury was confused by the elements of the crime, and believed that it was sufficient that Liaw actually did terrorize Calin, rather than that he *intended* to terrorize Calin. It is impossible to correctly instruct the jury of the necessary elements of second-degree kidnapping without instructing on specific intent. In light of our previous holdings regarding specific intent and the likely confusion caused by the instructions used in this case we hold that the trial court abused its discretion by denying Liaw's proposed instructions.

[¶21.]     Liaw must also show that he was prejudiced by the trial court's errors if we are to reverse his conviction. An accused must "be afforded a meaningful opportunity to present a complete defense." *State v. Iron Necklace*, 430 N.W.2d 66, 75 (S.D. 1988) (citation omitted). "A defense of diminished capacity is relevant to a specific intent crime, but not to a general intent crime." *Schouten*, 2005 S.D. 122, ¶ 18, 707 N.W.2d at 825 (citing *United States v. Kimes*, 246 F.3d 800, 806 (6th Cir. 2001)).

---

(. . . continued)
> If you find the defendant at the time of the alleged offense was so intoxicated as to have no volition and had lost control of (his)(her) will and was incapable of forming a purpose or intent, then specific intent is lacking and you must return a verdict of not guilty.

Liaw's Proposed No. 3 mirrors South Dakota Pattern Jury Instruction 2-6-1.

5.     We acknowledge that pattern jury instructions are not law, and a court is not bound to follow them. However, "they are often grounded in long-standing practice. They have also 'been carefully drafted to reflect the law.'" *State v. Nekolite*, 2014 S.D. 55, ¶ 17, 851 N.W.2d 914, 919 (quoting *State v. Eagle Star*, 1996 S.D. 143, ¶ 15 n.2, 558 N.W.2d 70, 73 n.2).

[¶22.]     The State contends that Liaw was not prejudiced because the jury instructions discussed the required elements of kidnapping, and because Liaw's counsel emphasized Liaw's state of mind during closing arguments. The State relies on this Court's holding in *State v. Klaudt*, 2009 S.D. 71, ¶ 20, 772 N.W.2d 117, 123, in support of its position. But *Klaudt* is inapposite to this case. In *Klaudt* the defendant appealed his conviction for rape. *Id.* ¶ 1, 772 N.W.2d at 118. Klaudt requested a jury instruction at trial providing, "The heart of a forcible rape charge is lack of consent. Therefore, if the alleged victim consented to the charged sexual penetration, the Defendant cannot be convicted of the charge of Second–Degree Rape." *Id.* ¶ 19, 772 N.W.2d at 123. This instruction was denied, but the trial court did instruct the jury "[i]f the alleged victim consented to the charged sexual penetration, the Defendant cannot be convicted of the charge of Second–Degree Rape." *Id.* We held that the "principle embodied in the first sentence was substantially covered, even if implicitly, in the second sentence, which was given in its entirety in [the given instruction]." *Id.* ¶ 20.

[¶23.]     *Klaudt* is distinguishable from the facts of this case as Liaw's jury was not instructed regarding the necessary element of specific intent. In fact the trial court gave no instruction on intent—either general or specific intent. We upheld the conviction in *Klaudt* because the instruction, actually given correctly, informed the jury that consent was a defense and only excluded defendant's conclusory statement about the offense. The premise of the two instructions was the same. Here, the trial court not only excluded the entire instruction dealing with specific intent, but eliminated all reference to specific intent from the voluntary intoxication

instruction. The principle of specific intent was not "substantially covered" by the given instructions as was the case in *Klaudt*. The State's argument that the given instructions were sufficient is not persuasive. The instruction given was taken almost verbatim from SDCL 22-19-1.1. While it was not incorrect for the court to instruct the jury as such, it was also necessary to separately instruct the jury on specific intent as it was an element of the offense. Additionally it was necessary to correctly instruct the jury on voluntary intoxication.

[¶24.] This Court discussed the issue of prejudice in the context of an intoxication jury instruction in *State v. Bittner*, 359 N.W.2d 121, 125 (S.D. 1984). While we held that the trial court's denial of the jury instruction was harmless error, we did so only because the "evidence [was] overwhelming that Bittner was not so intoxicated as to raise any reasonable doubt concerning his capacity to form the specific intent necessary to commit the crimes with which he was charged." *Id.* This case presents a much different scenario from *Bittner*. Liaw presented significant evidence that he was heavily intoxicated. Because of this evidence of intoxication, a jury instruction regarding specific intent, and the inclusion of the specific intent language in the instruction on voluntary intoxication, likely would have resulted in a different outcome in the trial.

**Conclusion**

[¶25.] Kidnapping in the second degree, in violation of SDCL 22-19-1.1 is a specific intent crime. The State was required to prove beyond a reasonable doubt that Liaw had the specific intent to "inflict bodily injury or terrorize" Angela Calin and the jury should have been so instructed. Additionally, Liaw was entitled to an

accurate and complete instruction on voluntary intoxication so that the jury could properly consider his defense. Liaw was prejudiced by the trial court's abuse of discretion. The conviction is reversed and the case remanded.

[¶26.]        GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and WILBUR, Justices, concur.