#30002-r-MES
**2023 S.D. 9**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

REBECCA L. VANDYKE,                    Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
DEUEL COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE DAWN M. ELSHERE
Judge

\* \* \* \*

CODY J. MILLER of
Lammers, Kleibacker,
   Dawson & Miller, LLP
Madison, South Dakota                    Attorneys for defendant
                                         and appellant.

MARTY J. JACKLEY
Attorney General

JENNIFER M. JORGENSON
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff and
                                         appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
JANUARY 9, 2023
OPINION FILED **02/22/23**

#30002

SALTER, Justice

[¶1.]     Rebecca Vandyke appeals her misdemeanor conviction for intentional

damage to property following a court trial.  Vandyke argues the court accepted the

prosecutor's argument that intentional damage to property is a strict liability

offense and, in so doing, applied the incorrect mens rea standard.  We reverse and

remand for further proceedings.

## Factual and Procedural Background

[¶2.]     The circumstances of this criminal case relate to what appears to be a

high-conflict parenting arrangement between Rebecca Vandyke and Justin Vostad

concerning their two young children.[1]

[¶3.]     At around 1:50 p.m. on December 26, 2021, Kara Vostad,[2] Justin's

current wife, arrived at Vandyke's home to pick up the two minor children who had

been staying with their mother.  After the scheduled exchange time of 2:00 p.m.

came and went, Kara attempted to notify Vandyke by sending several successive

text messages.  When these efforts went unacknowledged, Kara honked the horn of

her vehicle two times.  Vandyke eventually accompanied the children out of the

house at 2:10.

[¶4.]     Kara later related that after the children were in the car and she was

preparing to leave, she observed Vandyke standing next to her car "with her arms

---

1.    The record in the criminal file does not indicate whether Vandyke and Justin
      Vostad were previously married, but ancillary information suggests they
      were.  In a judicially noticed transcript from a related protection order
      proceeding, Vandyke describes Justin Vostad as her ex-husband.

2.    Because of the common Vostad surname, we will refer to Justin and Kara by
      their first names to avoid confusion.

crossed and a very aggressive look on her face." Kara began to back her car away from Vandyke's house when, Kara explained, Vandyke "aggressively attacked my car."

[¶5.] The exact number of times Vandyke hit Kara's car with her hand is disputed—Kara claimed it was four times, and Vandyke admitted to striking the vehicle twice. Both women agreed, however, that Vandyke struck Kara's windshield with her hand held in a fist, cracking it in a large "spiderwebbed" pattern. An estimate to fix the windshield placed the amount of the damage at $540.

[¶6.] Vandyke was charged with intentional damage to property as a Class 1 misdemeanor. *See* SDCL 22-34-1 (stating that intentional damage to property is a Class 1 misdemeanor when the resulting damage is "one thousand dollars or less, but more than four hundred dollars"). The case was tried to the circuit court without objection from the defense after the State agreed to forego seeking a jail sentence.

[¶7.] Vandyke testified that she was surprised that the windshield broke and was ashamed and embarrassed that she had damaged the car. She explained she was trying to get Kara's attention to ask if Justin was going to be home during the children's stay at the Vostad home because she had concerns about her children's safety when their father was not present.[3] Vandyke also attributed her

---

3. Although largely undeveloped in this record, Vandyke testified that her children "had been sexually abused while under the household of their father and his wife, and . . . [the children had] frequently told [Vandyke] how mean their stepmother is to them when their dad is not around . . . ."

conduct to the fact that she was pregnant with twins and had "a feeling it had everything to do with my hormones."

[¶8.] After it became clear Vandyke's defense theory was that she lacked the specific intent to damage the windshield, the prosecutor stated, at different points during the trial, that "this is a strict liability case." In fact, this was the theme of the prosecutor's brief closing argument:

> This is a strict liability case, that's true, but the causation of her intending to hit the windshield is what caused the damage in this matter and caused the windshield to break. It doesn't matter what the safety of her children were at the time because this is a strict liability case, but causation comes from intentionally hitting a window to gain someone's attention. It's her bad fortune that the window broke, but that does not leave her as not culpable for her actions especially with children in the car and her being pregnant.

[¶9.] In his closing argument, Vandyke's counsel focused on the text of the intentional damage to property statute which, he argued, applies only to a person who acts "with specific intent to" damage property. *See* SDCL 22-34-1 (punishing conduct by "[a]ny person who, with specific intent to do so, injures, damages, or destroys" public or private property). Using this mens rea standard, Vandyke's counsel argued that the State had failed to prove that she had acted with specific intent where "[a]ll of the evidence show[ed] that her intention was to get the attention of Kara Vostad and to have a discussion with her."

[¶10.] The circuit court found Vandyke guilty and aligned its stated rationale with the State's strict liability theory:

> You don't get to strike someone's vehicle in anger to get attention and have the window break and come in here and claim that you're not responsible for it because you just didn't specifically intend for that windshield to break. I believe you

were upset.  Maybe you had every right to be upset . . . .  But you don't get to claim that you didn't intend those results when you clearly were trying to get her attention.  You struck the vehicle, I believe you struck that vehicle several times.  And unfortunately, on the third or fourth time some damage resulted and you are responsible for that.  *And for you to come in here and claim that you're not based upon your attorney's read of the law, I respectfully disagree.*

You do not get to claim to this Court that you didn't intend for that.  That's your responsibility to pay for the damage for that vehicle.  You are clearly guilty of that.  I think your argument is just tenuous at best that you didn't have this specific intent, but you should have known better.

(Emphasis added.)

[¶11.]      Vandyke appeals raising two issues for our review that we restate as follows:

1.      Whether the circuit court erred when it did not apply a specific intent mens rea requirement to SDCL 22-34-1.

2.      Whether the circuit court erred by refusing to grant Vandyke's motion for judgment of acquittal.

## Analysis and Decision

### SDCL 22-34-1's mens rea requirement

[¶12.]      We begin by noting that true strict liability criminal offenses are exceptional, and the idea that some form of mental state is required for a conviction is much more common:

The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion.  It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil.

*Morissette v. United States*, 342 U.S. 246, 250, 72 S. Ct. 240, 243, 96 L. Ed. 288 (1952).

[¶13.]    Indeed, even where a statute's text does not include an explicit mental state, courts should be reluctant to infer that the omission was purposeful.[4]  *See Staples*, 511 U.S. at 605, 114 S. Ct. at 1797 ("[S]ilence on [a scienter requirement] by itself does not necessarily suggest that Congress intended to dispense with a conventional *mens rea* element . . . ."); *United States v. United States Gypsum Co.*, 438 U.S. 422, 437–38, 98 S. Ct. 2864, 2873–74, 57 L. Ed. 2d 854 (1978) (observing strict liability crimes are generally disfavored and recognized only in limited instances); *Liparota v. United States*, 471 U.S. 419, 426, 105 S. Ct. 2084, 2088, 85 L. Ed. 2d 434 (1985) (inferring that a knowledge requirement may be necessary to avoid criminalizing innocent conduct); *see also State v. Armstrong*, 2020 S.D. 6, ¶ 33, 939 N.W.2d 9, 17 (same).

[¶14.]    But here, we are not confronted with a statute that is silent as to a scienter requirement, and, contrary to the State's argument to the circuit court, SDCL 22-34-1 is not a strict liability crime.  Instead, the statute contains an express mens rea element that states either a general intent or specific intent requirement.[5]

---

4.    However, the United States Supreme Court has "typically declined to apply the presumption in favor of scienter in cases involving statutory provisions that form part of a 'regulatory' or 'public welfare' program and carry only minor penalties." *Rehaif v. United States*, 204 L. Ed. 2d 594, 139 S. Ct. 2191, 2197 (2019) (citing *Staples v. United States*, 511 U.S. 600, 606, 114 S. Ct. 1793, 1797; *Morissette*, 342 U.S. at 255–259, 72 S. Ct. at 246–47).

5.    Under a previous version of SDCL 22-34-1 which required only that a defendant "intentionally injure[ ], damage[ ], or destroy[,]" we held that intentional damage to property was a general intent crime.  *See State v. Bailey*, 464 N.W.2d 626, 628 (S.D. 1991); *State v. Balint*, 426 N.W.2d 316 (S.D. 1988); *State v. Huber*, 356 N.W.2d 468 (S.D. 1984).  However, as part of its comprehensive revision of the criminal code in 2005, the Legislature

(continued . . .)

[¶15.] On appeal, the State has abandoned its earlier strict liability argument and now claims that SDCL 22-34-1 states a specific intent to damage requirement, as Vandyke has maintained throughout the case.[6] We agree with the parties that SDCL 22-34-1 is a specific intent offense and offer the following analysis.

[¶16.] We begin with the text of the statute, understanding, as our decisions make clear, that the Legislature's use of words like "knowingly" or "intentionally" does not conclusively settle the question of whether a crime requires general or specific intent. *State v. Taecker*, 2003 S.D. 43, ¶ 25, 661 N.W.2d 712, 718 (quoting *State v. Heftel*, 513 N.W.2d 397, 400 (S.D. 1994)). Rather, these words simply mean that the statute requires a level of culpability that is "more than negligence or recklessness." *Id.*

[¶17.] The operative portion of SDCL 22-34-1 provides, "Any person who, with specific intent to do so, injures, damages, or destroys [public or private property without consent] is guilty of intentional damage to property." To properly understand the statute's use of the term "specific intent[,]" we must carefully

---

(. . . continued)
    amended SDCL 22-34-1 by eliminating "intentionally" and adding the text, "with specific intent to do so[.]" 2005 S.D. Sess. Laws ch. 120, § 97. We have not had the opportunity to interpret this amendment to the mens rea text since that time.

6.    The State argues that Vandyke has not preserved her specific intent argument for review because, in its view, she failed to "seek clarification" from the circuit court regarding the mens rea standard it was applying. We disagree. Vandyke has unquestionably preserved her mens rea argument for review. On appeal, she is making the same claim about SDCL 22-34-1 that she made to the circuit court.

examine it in light of the accepted distinction between specific and general intent. *See* SDCL 22-34-1.

[¶18.] We have held, in this regard, that specific intent means "some intent in addition to the intent to do the physical act which the crime requires[.]" *Taecker*, 2003 S.D. 43, ¶ 25, 661 N.W.2d at 718 (quoting *State v. Barrientos*, 444 N.W.2d 374, 376 (S.D. 1989). "Specific intent crimes require that the offender have 'a specific design to cause a certain result.'" *State v. Liaw*, 2016 S.D. 31, ¶ 11, 878 N.W.2d 97, 100 (quoting *State v. Schouten*, 2005 S.D. 122, ¶ 13, 707 N.W.2d 820, 824). General intent crimes are different. They "only require that the offender 'engage in conduct' that is prohibited by the statute, 'regardless of what the offender intends to accomplish.'" *Id.*

[¶19.] The clear and unambiguous text of SDCL 22-34-1 establishes that the Legislature intended the statute to criminalize conduct that causes damage to property where the defendant has a "specific intent to do so[.]" In other words, the defendant must have a specific design to cause a result—i.e. damage. Indeed, if it were otherwise, a broad range of otherwise innocent or negligent conduct would be indiscriminately swept into the ambit of SDCL 22-34-1.

### *The circuit court's application of SDCL 22-34-1*

[¶20.] Notwithstanding the consensus view that SDCL 22-34-1 provides for a specific intent offense, the parties differ as to whether the circuit court applied it. Drawing upon isolated excerpts from the circuit court's oral ruling, the State argues that the court applied the specific intent standard and simply held that Vandyke's

defense theory was unpersuasive. But we conclude that this view is not sustainable.

[¶21.] Read in its entirety, the circuit court's oral ruling suggests that the court accepted the State's improvident strict liability theory while responding to Vandyke's factual claim that she only intended to get Kara's attention:

> You don't get to strike someone's vehicle in anger to get attention and have the window break and come in here and claim that you're not responsible for it because you just didn't specifically intend for that windshield to break. . . . [Y]ou don't get to claim that you didn't intend those results when you clearly were trying to get her attention. You struck the vehicle . . . . [a]nd unfortunately . . . some damage resulted and you are responsible for that. And for you to come in here and claim that you're not *based upon your attorney's read of the law*, I respectfully disagree.

(Emphasis added.)

[¶22.] The most natural and logical reading of the circuit court's reference to its disagreement with defense counsel's "read of the law" is that it was rejecting Vandyke's legal argument that SDCL 22-34-1 included a specific intent requirement. Indeed, that was the only legal question presented by Vandyke's defense. The State, for its part, never identified the correct mens rea at trial and repeated its strict liability view several times. Consequently, we conclude that the court selected a legal view that foreclosed Vandyke's argument that she "didn't intend" the damage, and instead determined that the resulting damage alone rendered her "responsible."[7]

---

7.      This view may well be an accurate assessment of Vandyke's civil liability to pay for the damage she caused to Kara's windshield, but not her liability under the criminal law.

*Vandyke's motion for judgment of acquittal*

[¶23.] The fact that the circuit court seemingly applied the incorrect mens rea requirement does not, as Vandyke asserts, mean that there was no evidence of specific intent to damage Kara's windshield. For this factual argument, Vandyke claims the only evidence in the record establishes that she simply intended to get Kara's attention to initiate a conversation. However, our holding in this case does not reach so far as to resolve this factual argument.

[¶24.] Rather, we view the circuit court's erroneous application of SDCL 22-34-1's mens rea requirement as we would an erroneous instruction on the law in the context of a criminal jury trial. For this type of error, we vacate the conviction and remand for a new trial where "the instructions were erroneous, [and] also . . . prejudicial." *State v. Packed*, 2007 S.D. 75, ¶ 17, 736 N.W.2d 851, 856 (quoting *Vetter v. Cam Wal Elec. Co-op., Inc.*, 2006 S.D. 21, ¶ 10, 711 N.W.2d 612, 615).

[¶25.] This rule recognizes the restriction on our role as a reviewing court in a case like this one where we cannot definitively say that the State could not sustain the specific intent element simply because Vandyke disavowed it in her testimony. Instead, a retrial is necessary to allow the court, as the trier of fact, to consider Vandyke's factual claims in the context of all the circumstances surrounding the December 26 incident as part of an effort to determine whether Vandyke had the specific intent to damage Kara's property.

## Conclusion

[¶26.] Intentional damage to property, as described in SDCL 22-34-1, requires the State to prove that the defendant acted with the specific intent to cause

damage to the affected property.  It is not a strict liability offense for which a defendant who caused damage is necessarily guilty, and all appearances suggest that the circuit court erroneously accepted the State's argument that it was.  This error likely affected the outcome of this case by compelling a conviction solely as a consequence of the damage Vandyke caused.  We reverse her conviction and remand the case for a new trial.

[¶27.]     JENSEN, Chief Justice, and KERN, DEVANEY, and MYREN, Justices, concur.